## 24168

The STATE, Respondent v. George Anthony BROWN, Appellant.
(451 S.E. (2d) 888)

Supreme Court

56

*Douglas S. Strickler,* Columbia, *for appellant.*

*T. Travis Medlock, Atty. Gen., Donald J. Zelenka, Chief Deputy Atty. Gen., Harold M. Coombs, Jr., Sr. Asst. Atty. Gen., Norman Mark Rapoport, Asst. Atty. Gen.,* Columbia, and *Holman C. Gossett, Jr., Sol.* of *Seventh Judicial Circuit,* Spartanburg, *for respondent.*

Heard Oct. 4, 1994.

Decided Dec. 12, 1994.

Toal, Justice:

Appellant, George Brown (Brown), appeals his conviction for possession of crack cocaine with intent to distribute. Brown claims the provision in S.C. Code Ann. § 44-53-375 (Supp. 1991) of higher penalties for possession with intent to distribute crack cocaine than are provided for cocaine in other forms violates the Equal Protection and Due Process Clauses of the United States Constitution. We disagree and affirm.

## FACTS

In July 1990, police began conducting a video surveillance of Brown's apartment. As a result of the activity observed on the videotapes, the police obtained a search warrant for the apartment. The officers executed the search warrant and seized 11.673 grams of crack cocaine inside a vacuum cleaner bag found in Brown's apartment. They also seized $2,320 in cash. The police arrested Brown and informed him of his *Miranda* rights. Thereafter, Brown signed a waiver form and told police the crack cocaine belonged to him. Brown was then transported to the Sheriff's Department and again informed of his *Miranda* rights. There, Brown gave a written statement in which he admitted placing the crack cocaine inside the vacuum cleaner bag.

At trial, Brown claimed he had no knowledge of the drugs. He testified he loaned the vacuum to a neighbor on the morning of the search and was not aware the neighbor returned the vacuum. Brown also testified he planned to move to Florida that weekend and the cash in the apartment was to pay for moving expenses. Brown stated the officers promised not to arrest the other persons inside the apartment provided Brown admitted ownership of the crack cocaine. The officers, however, testified that they made no promises to Brown in exchange for his statement.

The jury convicted Brown of possession of crack cocaine with the intent to distribute and he was sentenced to fifteen years imprisonment and a $25,000 fine. Brown appeals.

## LAW/ANALYSIS

1. Due Process violation

Brown first alleges S.C. Code § 44-53-375(B) (Supp. 1991) is unconstitutionally vague and, therefore, violates the Due Process Clause of the United States Con-

stitution.[1] We disagree.

Section 44-53-375(B) provides:

> Any person who manufactures, distributes, dispenses, delivers, purchases, or otherwise aids, abets, attempts or conspires to manufacture, distribute, dispense, deliver, or purchase, or possess with intent to distribute, dispense, or deliver ice, crank, or crack cocaine, in violation of the provisions of Section 44-53-370,[2] is guilty of a felony and, upon conviction, for a first offense, must be sentenced to a term of imprisonment of. . . . Possession of one or more grams of ice, crank, or crack cocaine is prima facie evidence of a violation of this subsection.

Brown claims section 44-53-375(B) is unconstitutionally vague because it conflicts with other sections of the Narcotics and Controlled Substance Code, S.C. Code Ann. § 44-53-110-590 (1985 & Supp. 1991), which generally describe crack cocaine and provide different sentences than section 44-53-375(B).[3]

More recent and specific legislation supercedes prior general law. *Rainey v. State*, 307 S.C. 150, 414 S.E. (2d) 131 (1992). Accordingly, because section 44-53-375(B) is the most recent and specific statute concerning crack cocaine, this section prevails over any conflicting statute generally describing crack cocaine.

---

[1] Brown also argues that subsections 44-53-375(A) and (C) are unconstitutional. Brown was only convicted under subsection (B) and, therefore, does not have standing to raise these issues. *See Blandon v. Coleman*, 285 S.C. 472, 330 S.E. (2d) 298 (1985) (person may not invoke the judicial power to determine the validity of executive or legislative action unless he has sustained, or is in danger of sustaining, prejudice therefrom). Accordingly, we need not address these issues.

[2] Section 44-53-370 provides for specific sentences of various controlled and counterfeit substances and states in part:

> (a) Except as authorized by this article it shall be unlawful for any person:
> (1) to manufacture, distribute, dispense, deliver, purchase, or aid, abet, attempt, or conspire to manufacture, distribute, dispense, deliver, purchase, or possess with intent to manufacture, distribute, dispense, deliver, or purchase a controlled substance.

[3] For example, Brown contends that section 44-53-375(B) conflicts with S.C. Code Ann. § 44-53-210 (1985) (schedules controlled substance which includes drugs produced by means of chemical synthesis of coca leaves and any salt, compound or derivative), S.C. Code Ann. § 44-53-110 (1985) (defines narcotic drugs as produced by means of chemical syntheses of coca leaves, a compound manufacture, salt or derivative of coca leaves) and S.C. Code Ann. § 44-53-370 (1985) (sentences Schedule II drugs under different penalties than section 44-53-375).

Moreover, statutes are to be construed in favor of constitutionality and this Court will presume a legislative act is constitutionally valid unless a clear showing to the contrary is made. *See Mitchell v. Owens*, 304 S.C. 23, 402 S.E. (2d) 888 (1991). A penal statute offends due process only when it fails to give fair notice of the conduct it proscribes. *State v. Edwards*, 302 S.C. 492, 397 S.E. (2d) 88 (1990); *State v. Smith*, 275 S.C. 164, 268 S.E. (2d) 276 (1980). The statute must give sufficient notice to enable a reasonable person to comprehend what is prohibited. *State v. Crenshaw*, 274 S.C. 475, 266 S.E. (2d) 61, *cert. denied*, 449 U.S. 883, 101 S.Ct. 236, 66 L.Ed. (2d) 108 (1980). The terms of this statute clearly and unambiguously proscribe the possession of crack cocaine with the intent to distribute. Accordingly, we find no due process violation because this statute gives sufficient notice to enable a reasonable person to comprehend what is prohibited.

2. Equal Protection violation

Brown next alleges section 44-53-375(B) violates the Equal Protection Clause of the United States Constitution because there is no rational basis for the distinction between crack cocaine and cocaine. Brown argues crack cocaine and cocaine are essentially the same drug and, therefore, should not be subject to different sentencing provisions.

In determining whether a statute violates the Equal Protection Clause, the Court accords "great deference to a legislatively created classification, and the classification will be sustained if it is not plainly arbitrary and there is any reasonable hypothesis to support it." *Davis v. County of Greenville*, — S.C. —, 443 S.E. (2d) 383 (1994). The burden is upon those challenging the legislation to prove lack of rational basis. *Brown v. County of Horry*, 308 S.C. 180, 417 S.E. (2d) 565 (1992).

In *United States v. Harding*, 971 F. (2d) 410 (9th Cir. 1992), *cert. denied*, — U.S. —, 113 S.Ct. 1025, 122 L.Ed. (2d) 170 (1993), the Ninth Circuit found the distinction between cocaine and crack cocaine in the United States Sentencing Guidelines was neither arbitrary not irrational. The Court noted

[a]lthough crack and powder cocaine are different forms of the same drug, the routes of administration, their

> physiological and psychological effects, and the manner in which they are sold set the two forms of the drug apart. Crack is normally smoked in a glass pipe, while powder cocaine is most often ingested nasally. Because it is smoked, crack has a quicker and more intense effect on the brain than powder cocaine ingested nasally, causing a greater desire for more. Crack is also sold in smaller quantities and lower unit prices than powder cocaine, thereby reducing the financial barrier which had previously limited cocaine usage. In short, crack offers an easy, relatively inexpensive, and potent means for first-time users as well as addicts to experience a temporary high which leaves them craving more.

*Id.* at 413 (citation omitted). Moreover, every circuit that has addressed a claim similar to Brown's has rejected it. *See United States v. Lawrence,* 951 F. (2d) 751, 755 (7th Cir. 1991); *United States v. House,* 939 F. (2d) 659, 664 (8th Cir. 1991); *United States v. Avant,* 907 F. (2d) 623, 627 (6th Cir. 1990); *United States v. Thomas,* 900 F. (2d) 37, 39-40 (4th Cir. 1990); *United States v. Cyrus,* 890 F. (2d) 1245, 1248-49 (D.C. Cir. 1989); *United States v. Solomon,* 848 F. (2d) 156, 157 (11th Cir. 1988).

In *United States v. Buckner,* 894 F. (2d) 975 (8th Cir. 1990), the Eighth Circuit found that Congress clearly had the following rational motives in creating a similar distinction between crack cocaine and cocaine: the potency of the drug, the ease with which drug dealers can carry and conceal it, the highly addictive nature of the drug, and the violence which often accompanies trade in it. *Id.* at 978. We also find the legislature's classification in sentencing between crack cocaine and cocaine is rationally related to these legitimate state interests and, therefore, does not violate the Equal Protection Clause.[4]

Brown also argues the classification between crack cocaine and cocaine is unreasonable because the legislature passed

---

[4] Brown argues the Court found crack cocaine and cocaine to be the same substance in *State v. Johnson,* 295 S.C. 215, 367 S.E. (2d) 700 (1988). In *Johnson,* the defendant was convicted of distributing cocaine after she sold crack cocaine to the police. This conviction was prior to the passage of section 44-53-375 and, therefore, the only classification the defendant could have been convicted of was cocaine. Moreover, whether the defendant in *Johnson* was convicted under the proper statute was not an issue in the appeal. Accordingly, this argument is meritless.

section 44-53-375(B) without following S.C. Code Ann. § 44-53-160 (1985). Section 44-53-160 provides:

> Annually, within thirty days after the convening of each regular session of the General Assembly, the Department shall recommend to the General Assembly any additions, deletions or revisions in the schedules of substances. . . .

This statute provides the guidelines for the Department of Health and Environmental Control to alter the drug schedules. The plain language of the statute does not limit the powers of the legislature to alter the statute. Accordingly, this argument is meritless. *See State v. Price,* 495 So. (2d) 389 (La. App. 1986), *writ denied* 499 So. (2d) 84 (1987) (drug was added to the controlled drug statute by the legislature and, therefore, did not conflict with statute that provides guidelines for addition of controlled substance by Department of Health and Human Services).

Brown also contends section 44-53-375(B) is racially discriminatory and, therefore, violates the Equal Protection Clause. Brown argues not only that statistics show the statute has a disparate impact on African-Americans, but that the legislature knew that the proposed legislation would be discriminatory in nature when it passed the statute.

Under traditional equal-protection analysis, "even if a neutral law has a disproportionately adverse impact upon a racial minority, it is unconstitutional . . . only if that impact can be traced to a discriminatory purpose." *United States v. Lattimore,* 974 F. (2d) 971, 975 (8th Cir. 1992) (citing *Personal Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 2292, 60 L.Ed. (2d) 870 (1979)), *cert. denied,* — U.S. —, 113 S.Ct. 1819, 123 L.Ed. (2d) 449 (1993). "The phrase discriminatory purpose implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.*

Brown argues that during its hearings on the crack cocaine bill, the General Assembly was provided with a Florida study which suggested that the primary abusers of crack cocaine are African-American males. The fact that such testimony was presented at legislative hearings does not support a finding that the General Assembly passed the crack cocaine statute

"because of" its adverse effects upon African-Americans. Rather, all evidence points to the conclusion that the legislature was reacting to the "dramatic appearance of crack on America's streets and the violent impact crack would have upon the drug trade in the United States, when it established the harsh sentences for crack offenses." *Id.* at 975-76. Accordingly, we find the statute is not racially discriminatory and does not violate the Equal Protection Clause. *See Lattimore, supra; United States v. Bynum,* 3 F. (3d) 769 (4th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1105, 127 L.Ed. (2d) 416 (1994) (alleged disparate impact the statute has on blacks does not violate the equal protection component of the Fifth Amendment); *United States v. Galloway,* 951 F. (2d) 64 (5th Cir. 1992) (district court's finding that there was no discriminatory intent behind the enactment of crack cocaine statute was proper).

3. Other claims

Brown next argues the trial judge erred in denying his motion to declare crack cocaine a noncontrolled substance which is penalized under S.C. Code Ann. § 44-53-390 (1985). We disagree.

Section 44-53-390 provides

> (a) It is unlawful for any person knowingly or intentionally . . .
>
>> (6) To distribute or deliver a noncontrolled substance or an imitation controlled substance. . . .
>
> (b) Any person who violates this section is guilty of a misdemeanor and, upon conviction shall be imprisoned for not more than five years, or fined not more than ten thousand dollars, or both. . . .

S.C. Code Ann. § 44-53-110 (1985) defines a "[n]oncontrolled substance" as

> any substance of chemical or natural origin which is not included in the schedules of controlled substances set forth in this article or included in the federal schedules of controlled substances set forth Title 21, Section 812 of the United States Code or in Title 21, Part 1308, of the Code of Federal Regulations.

As stated above, section 44-53-375(B) is the most recent and specific legislation concerning crack cocaine. Accordingly, the trial judge properly sentenced Brown under section 44-53-

375(B) rather than under section 44-53-390. *See Rainey v. State*, 307 S.C. 150, 414 S.E. (2d) 131 (1992) (more recent and specific legislation supersedes prior general law).

Brown argues the trial judge erred in failing to direct a mistrial after two police officers' statements were admitted. Brown claims the officers' statements about receiving information before establishing a surveillance, receiving complaints while in the neighborhood, and being "familiar with" the neighborhood were hearsay.

Evidence is not hearsay unless it is an out of court statement offered to prove the truth of the matter asserted. *State v. Sims*, 304 S.C. 409, 405 S.E. (2d) 377 (1991), *cert. denied*, — U.S. —, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992). Additionally, an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken. *United States v. Love*, 767 F. (2d) 1052 (1985), *cert. denied*, 474 U.S. 1081, 106 S.Ct. 848, 849, 88 L.Ed. (2d) 890 (1986). Here, these statements were not entered for their truth but rather to explain why the officers began their surveillance. These statements are not hearsay and, therefore, the trial judge committed no error in allowing these statements into evidence

For the reasons stated above, the decision of the trial judge is AFFIRMED.

CHANDLER, C.J., and FINNEY, MOORE and WALLER, JJ., concur.