2339

The STATE, Respondent v. John C. GREEN, Appellant.
(458 S.E. (2d) 73)

Court of Appeals

*Chief Attorney David T. Stacey,* of the *South Carolina Office of Appellate Defense,* Columbia, *for appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka, Sr. Asst. Atty. Gen., Harold M. Coombs, Jr.,* and *Asst. Atty. Gen. Miller W. Shealy, Jr.,* and *Sol. Richard A. Harpootlian,* Columbia, *for respondent.*

Heard Mar. 7, 1995.

Decided Apr. 17, 1995; Reh. Den. May 31, 1995.

HOWARD, Judge:

John C. Green appeals his conviction for possession with intent to distribute crack cocaine. We affirm.

On September 28, 1992, law enforcement received an anonymous tip that Green would be traveling from Columbia to Lakeland, Florida on the Amtrack train that night, stay in Florida only nine hours, and return to Columbia. The informant also stated that Green had been seen in a red Chevrolet automobile with license plate number CWC 547. A narcotics officer, John David Freels, testified that such a long trip of the short duration to a known drug distribution center sent up a "red flag" that Green could be involved in illegal drug activity. Upon receiving this information, Freels began gathering additional information about Green. He discovered that two other officers had contact with Green in a high crime neighborhood. While investigating residents' complaints of illegal drug activity in the area, these officers conducted a field contact inter-

view with Green. After Green explained he was in the area visiting his girlfriend, the officers allowed him to go. The officers saw Green once again while investigating continued complaints about the same area. Green was standing beside a red automobile, with license plate number CWC 547, and fled when the officers approached. The officers then inventiorized the automobile and discovered a round-trip Amtrack train ticket to Lakeland, Florida with Green's name on it in with the same dates and times as the tip. There was no evidence of drugs in the car.

After learning of these incidents, Freels discovered Green had been arrested a month prior to these events for possession of cocaine. Additionally, Freels learned Green had changed his train destination by making a reservation to Miami. However, Green never exchanged his Lakeland ticket, but boarded the train with the Lakeland bound passengers. Based on the totality of the circumstances, Freels obtained a search warrant on the night of September 29 for Green and any packages in his possession to be executed when Green returned to Columbia on an Amtrack train on September 30, 1992.

After Green departed the train, three law enforcement officers approached him while he was in the restroom. They identified themselves and informed Green of the search warrant. The agents read Green his *Miranda* warnings. Before the officers executed the search warrant, however, Green consented to the search. Nevertheless, the search warrant was read to Green. During the search Green stated to the officers that they must have been looking for his brother. Green claimed he had been to Kingstree, South Carolina, not Florida, on the train. However, the Amtrack train does not service Kingstree.

At this time, additional officers had stopped Walton Davis, another passenger on the train because they suspected he was traveling with Green. An agent identified himself to Davis and asked for permission to search him and his bags. Davis' consented, and the officer discovered a bag of crack cocaine on his person. The officer asked Davis if the drugs belonged to him. Davis told the officer the drugs belonged to Green, and Green had paid Davis to transport them from Florida. The officer then reported Davis's statements to the agents who were at that time searching Green. At that point, Green was ar-

rested and taken to the Richland County Sheriff's Department where he made a written statement concerning his whereabouts during the previous two days. the written statement about his travels conflicted with Green's earlier statement and ones he made to officers while being transported to the sheriff's department.

## I.

Green contends the trial court erred by allowing testimony that the officers were in the neighborhood where they twice encountered Green because the officers had received complaints from residents concerning drug activity in the area. Green claims the complaints from residents were inadmissible hearsay and so prejudicial to Green as to constitute reversible error. Evidence is not hearsay unless it is offered to show the truth of the matter asserted. *State v. Sims*, 304 S.C. 409, 405 S.E. (2d) 377 (1991), *cert. denied*, 502 U.S. 1103, 112 S.Ct. 1193, 117 L.Ed. (2d) 434 (1992). In a recent case challenging similar testimony, our Supreme Court held that such testimony was "not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." *State v. Brown*, 317 S.C. 55, 451 S.E. (2d) 888 (1994) (citing *United States v. Love*, 767 F. (2d) 1052 (4th Cir. 1985), *cert. denied*, 474 U.S. 1081 (1986)). Here, the testimony was offered to explain the officers' actions, specifically why they were in the area stopping individuals and asking them for identification. In accordance with *State v. Brown*, we conclude this testimony was not hearsay and was properly admitted to explain the presence of the police.

## II.

Green also argues the trial court should have suppressed Green's statements concerning his alleged travel because the statements were fruits of an illegal arrest. Green's counsel waived any Fifth Amendment objections and agreed Green gave all his statements freely and voluntarily. Green contends, however, his Fourth Amendment rights were violated when the officers conducted an illegal search which led an illegal arrest. As a result, the statements made by Green during the search and seizure should be suppressed. *See Lanier v. South Carolina*, 474 U.S. 25, 26, 106

S.Ct. 297, 298, 88 L.Ed. (2d) 23 (1985) ("[T]he fact that [a] confession may be "voluntary" for purposes of the Fifth Amendment, in the sense that *Miranda* warnings were given and understood, is not by itself sufficient to purge the taint of the illegal arrest. In this situation, a finding of "voluntariness" for purposes of the Fifth Amendment is merely a threshold requirement for Fourth Amendment analysis' " (quoting *Taylor v. Alabama,* 457 U.S. 687, 690, 102 S.Ct. 2664, 2667, 73 L.Ed. (2d) 314 (1982).

Green made five different statements during the incident. While the police were searching him at the train station, Green told the police they must have been looking for his brother who had gone to Florida, because Green had been to Kingstree, South Carolina. While in the patrol car travelling to the police department, he told police he went to Kingstree, South Carolina, and then to Lakeland, Florida. At the police department, Green had been to Kingstree, South Carolina. While in the patrol car travelling to the police department, he told police he went to Kingstree, South Carolina, and then to Lakeland, Florida. At the police department, Green told police he had a ticket to Lakeland, but only went to Kingstree. He later maintained in a written statement made at the department that he went to Kingstree, then Orlando and returned to Columbia. Subsequent to penning the written statement, he said he had planned to go to Miami, but instead travelled to Assembly, South Carolina,[1] drove to Kingstree, then drove to Orlando,and caught a train back to Columbia.

Except for the first statement made at the train station, all the statements were made after Davis named Green as the rightful owner of the crack cocaine discovered on Davis. Therefore, at the time of the later statements, Green was properly arrested because, clearly, the police had probable cause to arrest him after Davis's accusation. As a result, the admission into evidence of the last four statements posed no Fourth Amendment problems.

We need not address whether the search warrant was valid. Assuming arguendo the police lacked probable cause for the search warrant, and Green's first statement to the police was

---

[1] Assembly, South Carolina does not exist.

the fruit of an illegal search, we find its admission was harmless beyond a reasonable doubt. In closing arguments, the Solicitor effectively pointed out the inconsistencies in Green's story to imply Green's guilt. The inconsistencies, however, were so numerous throughout his statements that even if the first one was improperly admitted, there were ample additional contradictions in the last four statements sufficient to imply guilt. Therefore, after reviewing the entire record, we find the only possible error, improperly admitting Green's first statement, was harmless error.

Affirmed.

SHAW and GOOLSBY, JJ., concur.