490 S.E.2d 626

**The STATE, Respondent,**

v.

**Robert KEESEE, Appellant.**

**No. 2707.**

Court of Appeals of South Carolina.

Heard June 3, 1997.

Decided July 28, 1997.

Rehearing Denied Sept. 25, 1997.

Robert Marshall Jones, Rock Hill; and Jay Bender, and S.C. Office of Appellate Defense, Columbia, for appellant.

Attorney General Charles Molony Condon, Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Caroline C. Tiffin, Columbia; and Solicitor John R. Justice, Chester, for respondent.

GOOLSBY, Judge.

Robert Keesee was convicted and fined for hunting in a wildlife management area without the required permit. We affirm.

While patrolling Wildlife Management Area (WMA) land in Fairfield County in December 1995, a Department of Natural Resources (DNR) officer happened upon Keesee and a companion hunting on the land. Keesee produced a Catawba Indian's hunting license, which was a "combination type license, hunting and fishing." The officer asked Keesee where his WMA permit was. Keesee told the officer he did not need a WMA license in light of his Catawba combination license. The officer cited Keesee for hunting on WMA land without a WMA permit.

At a bench trial in January 1996, Keesee was convicted in magistrate's court and ordered to pay a fine of $376.00. The circuit court affirmed.

Now on appeal, Keesee renews the same argument he made below: by virtue of the hunting license provision in the Catawba Indians Claims Settlement Act, S.C.Code Ann. §§ 27–16–10 through –140 (Supp.1996) ("Claims Act"), his Catawba combination license satisfies the WMA permit requirement. Additionally, Keesee argues his due process rights were violated because he did not receive fair notice that his conduct would be criminal.

## I.

Since Keesee was cited in December 1995, the General Assembly has made significant changes to the Hunting, Fishing, and Trapping Licenses code.[1] Nonetheless, we hold under the hunting code in place at the relevant time, there was no error below in finding that Keesee violated the WMA permit requirements.

Preliminarily, we note our primary concern in interpreting a statute is to ascertain and give effect to the intention of the legislature. *Singletary v. South Carolina Dep't of Educ.*, 316 S.C. 153, 447 S.E.2d 231 (Ct.App.1994). If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation and the court has no right to look for or impose another meaning. *City of Columbia v. ACLU of S.C., Inc.*, 323 S.C. 384, 475 S.E.2d 747 (1996). Where a statute is complete, plain, and unambiguous, legislative intent must be determined from the language of the statute itself. *State v. Blackmon*, 304 S.C. 270, 403 S.E.2d 660 (1991). Words must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Adkins v. Comcar Indus.*, 323 S.C. 409, 475 S.E.2d 762 (1996). We should consider, however, not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *South Carolina Coastal Council v. South Carolina State Ethics Comm'n*, 306 S.C. 41, 410 S.E.2d 245 (1991). Statutory provisions should be given a reasonable construction consistent with the purpose of the statute, and statutes that are part of the same act must be read together. *Jackson v. Charleston County Sch. Dist.*, 316 S.C. 177, 447 S.E.2d 859 (1994); *Burns v. State Farm Mut. Auto. Ins. Co.*, 297 S.C. 520, 377 S.E.2d 569 (1989).

Under the former code provisions, the General Assembly provided for graduations of hunting licenses. A resident could obtain a hunting license, a big game permit in addition to a hunting license, or a combination license which included the

---

1. All of the sections of Article I & III of the hunting code cited herein were repealed by 1996 Act No. 372 § 2, effective July 1, 1996.

hunting license, big game permit, and a fishing license. *See* S.C.Code Ann. § 50–9–120 (1992 & Supp.1996) (hunting license); § 50–9–135 (1992 & Supp.1996) (big game permit); § 50–9–10 (1992 & Supp.1996) (combination fishing, hunting, and big game license).

In addition to the three licenses mentioned, the General Assembly imposed an added requirement for persons hunting on WMA land. Section 50–9–150 provided that the "South Carolina Wildlife and Marine Resources Department shall promulgate regulations requiring persons sixteen and above who hunt on wildlife management areas to purchase a permit." S.C.Code Ann. § 50–9–150 (1992 & Supp.1996). Like the distinct hunting license and big game permit, a person could obtain the WMA permit separately. Alternatively, just as a person can obtain a combination fishing, hunting, and big game license, a resident can obtain a resident sportsman license. The sportsman license provision provided in pertinent part that:

> A resident of this State may obtain, in the same manner as other fishing and hunting licenses and the resident big game permit are obtained, a sportsman license in lieu of separate licenses for statewide fishing, statewide hunting for big game, and hunting on wildlife management areas.

S.C.Code Ann. § 50–9–15 (1992 & Supp.1996).

▉ The former hunting code's provisions were straightforward: a resident could obtain the basic hunting license, plus a big game permit, or a combination of the two plus a fishing license. Additionally, to hunt on WMA land a person is required to purchase a permit.[2] The WMA permit can be purchased separately, or, the resident can obtain a resident sportsman license, which was no more than an upgraded combination fishing, hunting, and big game license, with the WMA permit included. Accordingly, under the code provisions then applicable, Keesee having been found hunting on WMA land, was required to have: (1) a valid hunting license

---

2. The State argues the WMA permit is a precondition to entering WMA land and "[e]ntry of WMA areas without such a permit is tantamount to trespass." Although the General Assembly extensively delegated the regulation of WMA land to the DNR, neither the plain language of the statute nor the DNR regulations themselves support such a broad interpretation of the statute.

632

(§ 50–9–120), or a big game permit (§ 50–9–135), or the combination license (§ 50–9–10); *and* (2) a WMA permit, whether obtained separately (§ 50–9–150), or obtained as part of the all-inclusive resident sportsman license (§ 50–9–15). *Cf.* 27 S.C.Code Ann.Regs. 123–40(2.4) (1992) ("It is unlawful for anyone to hunt or take wildlife on WMA land unless an individual is in possession of a valid South Carolina license; a valid WMA permit; and other applicable federal or state permits, stamps, or licenses."). Here, Keesee satisfied only the hunting license requirement, but not the WMA permit requirement. Thus, like the two courts before us, we conclude that Keesee was properly cited for failing to have the required permit to hunt on WMA land.

■ We fail to see how the title "Catawba Combination License" should alter our conclusion. The hunting and licensing section of the Claims Act provides in pertinent part that:

Hunting and fishing, on or off the Reservation, must be conducted in compliance with the laws and regulations of South Carolina. Members of the Tribe are subject to all state and local regulations governing hunting and fishing on and off the Reservation. However, for ninety-nine years following the effective date of this chapter, members of the Tribe are entitled to personal state hunting and fishing licenses without payment of fees.

S.C.Code Ann. § 27–16–120(E) (Supp.1996). The plain meaning of the statute waives licensing fees, but more importantly for our purposes, it explicitly states that members are *"subject to all state and local regulations governing hunting and fishing on and off the Reservation." Id.* (emphasis added). Other than the fee provisions, the statute clearly provides that Catawba Indians will be treated no differently than other residents of the state. Moreover, this provision of the Claims Act draws no distinction between the several types of hunting licenses that are found in the hunting code. Thus, by referencing the hunting and fishing licenses in only a general sense, and by applying "all state and local regulations," the General Assembly plainly intended that the hunting code, including its variants of hunting licenses and WMA requirement, shall apply with full force to tribe members as any other state resident. The word "Catawba" on Keesee's combination li-

cense in no way converted his section 50–9–10 combination license into a section 50–9–15 resident sportsman license.

Keesee argues because the terms "license" and "permit" are used synonymously under the resident sportsman license provision (§ 50–9–15), then the Claims Act provision (§ 27–16–120(E)) necessarily includes a license to hunt on WMA land. Assuming the terms are used synonymously, we disagree with Keesee's interpretation in tying together the two separate statutes. Indeed, under Keesee's logic, section 27–16–120(E)'s license language could easily encompass a basic hunting license, or a big game permit, as equally as it could encompass the WMA permit. Keesee reads the licensing language of the Claims Act provision too broadly and puts meaning into the words that is neither plain nor reasonable. Simply put, section 27–16–120(E) describes hunting licenses in a generic sense while the hunting code provides explicit guidance on the different types of licenses.

Keesee also contends if license and permit have meanings that are not synonymous under the hunting code, then sections 27–16–120(E) and 50–9–150 contain ambiguities. This argument creates ambiguities where none exist. A WMA permit is required to hunt on WMA land in addition to the other hunting licensing provisions—the permit can be obtained separately, or, as part of the all—inclusive resident sportsman license. Similarly, the big game permit can be obtained separately once a person already has a hunting license, or, the big game permit can be obtained as part of the combination fishing and hunting license. Regardless of how these two terms are used, however, the General Assembly has made clear how these different types of licenses and permits are to be regulated in the hunting code.

The hunting code provides definitions and lists the requirements for the variations of licenses and permits. Keesee seeks to take the word license from one statute (Claims Act) where it is used in a generic sense, and import it to a wholly separate statute (hunting code) in order to select the most all-inclusive type of hunting license beneficial to him. The plain language of the Claims Act does not permit such a construction. Accordingly, because the Claims Act expressly requires that all tribe members are *subject to all state and local regulations governing hunting*," and because Keesee failed to

obtain the required permit to hunt on WMA land, we find no error.

## II.

Keesee also contends his due process rights were violated because he did not receive fair notice that his conduct was criminal.

A statute offends due process when it does not give fair notice of the conduct it proscribes. *State v. Brown*, 317 S.C. 55, 451 S.E.2d 888 (1994). The statute must give sufficient notice so that a reasonable person can comprehend what the statute prohibits. *Id.*

■ Keesee argues the DNR's conduct failed to put him on notice. He claims when he applied and received his Catawba combination license, he was never notified that the license did not encompass the right to hunt on WMA lands. Keesee also claims he was stopped in the past on WMA lands and his Catawba combination license was not challenged. These two instances are insufficient to overcome the fact that the two pertinent WMA provisions in the hunting code, sections 50–9–15 and 50–9–150, plainly put Keesee and any other hunters in South Carolina on notice. *Ex parte Wessinger*, 235 S.C. 239, 111 S.E.2d 13 (1959) (persons are charged with knowledge of statutes).

Keesee also argues an Attorney General's Opinion interpreting the Claims Act, Op.S.C.Att'y Gen. 68 (1994), provides that the Catawba combination license includes the right to hunt in WMA areas. We disagree. The issue addressed there was the breadth of section 17–16–120(E) and its waiver provisions. The DNR's position was that members of the tribe can obtain a WMA permit, in addition to the combination license, but must pay for it. The Attorney General's opinion differed, holding that big game permits and WMA permits are included in those licenses in which the fee is waived for Catawba Indians. Contrary to Keesee's interpretation, the Attorney General's opinion does not stand for the proposition that a Catawba combination license includes the right to hunt on WMA lands.

**AFFIRMED.**

STILWELL, J., concurs.

ANDERSON, J., concurs and dissents in a separate opinion.

ANDERSON, Judge (concurring in Part 1 of the majority opinion and dissenting in Part II of the majority opinion):

Keesee contends his due process rights were violated. This issue was not raised to and ruled on by the trial judge. Accordingly, it is not preserved for appellate review. *Hamiter v. Retirement Div. of S.C. Budget, Control Bd.*, 326 S.C. 93, 484 S.E.2d 586 (1997) (issue raised for first time on appeal is barred from review); *State v. Hoffman*, 312 S.C. 386, 440 S.E.2d 869 (1994) (issue not properly preserved cannot be raised for first time on appeal); *State v. Williams*, 303 S.C. 410, 401 S.E.2d 168 (1991) (issue must be raised to and ruled on by trial judge).

The Court of Appeals should not address the merits of an issue not preserved for appellate review. *Hendrix v. Eastern Distribution, Inc.*, 320 S.C. 218, 464 S.E.2d 112 (1995). Clearly, our Supreme Court has strictly enforced the principle of error preservation. Cases are legion in regard to the legal proposition that issues not raised in the trial court will not be considered on appeal. *State v. Hudgins*, 319 S.C. 233, 460 S.E.2d 388 (1995). Keesee did not raise this issue to the trial judge; therefore, the issue is not preserved for our review.

Keesee is procedurally barred from raising this issue on appeal because it was not raised below. *State v. Harris*, 311 S.C. 162, 167, 427 S.E.2d 909, 912 (Ct.App.1993) ("An issue not raised at trial is waived on appeal."); *see also McCoy v. McCoy*, 283 S.C. 383, 323 S.E.2d 517 (1984) (Procedural bar of error preservation applies equally to constitutional errors).