525 S.E.2d 514

**Robert J. CAPROOD, Respondent,**

**v.**

**The STATE of South Carolina, Petitioner.**

**No. 25039.**

Supreme Court of South Carolina.

Submitted Sept. 22, 1999.

Decided Jan. 4, 2000.

Rehearing Denied Feb. 3, 2000.

J.D. Bryan, of Walterboro, for respondent.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Teresa A. Knox, Assistant Attorney General J. Benjamin Aplin, of Office of the Attorney General, of Columbia, for petitioner.

BURNETT, Justice:

Respondent was convicted of armed robbery. His direct appeal was dismissed. His petition for post-conviction relief (PCR) was granted. We affirm in part, reverse in part, and remand for a new trial.

## FACTUAL/PROCEDURAL BACKGROUND

On May 20, 1993 between 3:00 and 4:00 in the afternoon, a man entered a Texaco convenience store directly off Interstate 95 in Colleton County. Ruth Filmon, the employee on duty, was behind the counter stocking cigarettes when the man entered and asked if the store sold money orders. When Ms. Filmon told him "no," the man walked to the end of the counter toward a display, and Ms. Filmon resumed her stocking. A moment later, out of the corner of her eye, she saw the man coming up behind her. The man held against her back something sharp and silver she believed was a knife, and ordered Ms. Filmon to give him the money in the cash register. The man told Ms. Filmon not to look at him as he left, or he would kill her. Once she heard the man leave, Ms. Filmon activated the silent alarm, then tried to call the police, forgetting the alarm shuts down the telephones. She then ran out into the parking lot to get help. As she exited the store, she saw the man pull away in a small blue station wagon bearing Florida license tags and proceed north on I–95. A truck driver in the parking lot called the police.

According to the description Ms. Filmon gave the police, the robber was a deeply tanned white male with shoulder length medium brown hair, thickly parted in the middle and no facial hair. He wore wrap-around, reflective sunglasses, a white tee shirt and faded, grease-stained blue jeans, and was approximately 5 feet 9 inches tall and 140 pounds. According to the truck driver, the man had tattoos on both shoulders.

Detective Donald Pooser of the Colleton County Sheriff's Department was crossing I-95 on Highway 61 when he observed a small import medium blue station wagon on I-95. Apparently within moments, a dispatch went out describing the vehicle involved in the Texaco robbery, and Detective Pooser pursued the vehicle. Traffic was heavy and he was unable to regain sight of the vehicle.

Meanwhile, Detective Ted Stanfield, also of the Colleton County Sheriff's Department, was responding to a call regarding an earlier armed robbery in Jasper County when he heard the dispatch about the Texaco robbery. Both robberies involved vehicles of the same description and both were said to be proceeding north on I-95. Several other Colleton County officers joined the pursuit. Soon thereafter, Detective Stanfield heard Detective Pooser's transmission of the vehicle sighting. Knowing Detective Pooser was not in a patrol car, Detective Stanfield radioed ahead to Clarendon County, asking the Sheriff's Department to set up a roadblock for the suspect vehicle. When the officers reached the roadblock, they realized the vehicle must have exited the interstate. As they searched for the vehicle, they received a call from Clarendon County and Summerton police about a third armed robbery involving the same described vehicle. The Summerton police caught the vehicle and rammed it, but the driver escaped.

As Clarendon County gathered manpower, dogs, and a helicopter team to search for the fleeing suspect, Detective Stanfield took photographs and helped inventory the vehicle. Among other things, the vehicle contained 71 one dollar bills in the glove compartment, $14.50 in rolled coins, an Old Hickory knife, and two pairs of wrap-around sunglasses.

The suspect captured was Respondent. He was dressed in dark jeans and a light gray tank top, and had tattoos on both

shoulders. He had some light facial hair, though not a full moustache and goatee. Officers found an additional $296 in Respondent's sock, $61.11 in his wallet, $150 in a pocket, and $6.71 in another pocket.

Respondent's questions at PCR suggest that at some point after the arrest, Ms. Filmon identified Respondent from a photographic lineup prepared for Clarendon County. His questions also indicate officers attempted a physical lineup which was aborted because Respondent was fighting with the police. Shortly thereafter, Ms. Filmon moved out of South Carolina. Five months after the robbery, Detective Stanfield composed a photographic lineup and flew to Ms. Filmon's home to show it to her. From that lineup, Ms. Filmon identified Respondent. She also made an in-court identification.

The jury convicted Respondent of armed robbery, and he was sentenced to 20 years, consecutive to time he was already serving.[1] Respondent's direct appeal was dismissed. The PCR judge granted Respondent's petition for PCR based on ineffective assistance of counsel. This Court granted the State's petition for writ of certiorari.

## ISSUES

I. Did the PCR court err in granting relief on the grounds that defense counsel was deficient in waiving Respondent's right to cross examine witnesses and allowing prejudicial hearsay evidence?

II. Did the PCR court err in granting relief on the grounds that defense counsel was deficient in not moving for a mistrial or objecting when witnesses for the State referred to other crimes Respondent may have committed?

## DISCUSSION

### I. Waiver of Right of Cross Examination

The PCR court ruled defense counsel was ineffective in waiving Respondent's right to cross examine witnesses and

---

**1.** Respondent pled guilty to the Clarendon County robbery and was given a sentence of 21 years. A jury in Jasper County acquitted him of the third robbery.

allowing in prejudicial hearsay evidence. The court concluded counsel was ineffective in four particulars:

1) He did not move to strike or ask for limiting instructions when his objection to a hearsay description of the getaway car was sustained;

2) He introduced into evidence a report by Detective Medlar containing

a) a hearsay description of the car given by an absent witness,

b) reference to an armed robbery in Clarendon County and a statement that Respondent committed the crime,

c) a hearsay description of the robber and the robbery by the victim;

3) He asked Detective Medlar to read the description of the suspect given to him by the uncalled witness;

4) He did not object when the State exceeded the scope of redirect examination and introduced hearsay evidence by asking Detective Medlar for a description of the getaway car given mainly by an uncalled witness.

We disagree.

 There is a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in a case. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *Cherry v. State,* 300 S.C. 115, 386 S.E.2d 624 (1989). *Strickland* set forth a two-prong test for determining ineffective assistance of counsel, adopted by this Court in *Cherry.* First, Respondent must show that his counsel's performance was deficient based on a standard of "reasonableness under prevailing professional norms." *Id.* Second, Respondent must show that the deficient performance prejudiced Respondent to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* The PCR applicant has the burden of proving both prongs. *McCray v. State,* 317 S.C. 557, 559, 455 S.E.2d 686, 687 (1995).

 This Court gives great deference to the PCR court's findings of fact and conclusions of law. *McCray v. State,* 317 S.C. 557, 455 S.E.2d 686 (1995). The existence in the record

of "any evidence" of probative value is sufficient to uphold the PCR judge's ruling. *Webb v. State*, 281 S.C. 237, 314 S.E.2d 839 (1984).

 There is no probative evidence in the record to support the PCR court's ruling on this issue. First, defense counsel testified at the PCR hearing that as a trial strategy, he did not request curative instructions because they tend to bring into focus precisely the item the objector has kept out. Where counsel articulates a valid reason for employing certain strategy, such conduct will not be deemed ineffective assistance of counsel. *Stokes v. State*, 308 S.C. 546, 419 S.E.2d 778 (1992).

 Second, the descriptions of the suspect vehicle and the perpetrator contained in Detective Medlar's report were cumulative to testimony given at trial by Ms. Filmon, the victim. It is unclear how much of the description in the report came from Ms. Filmon and how much came from the uncalled witness. At most, it appears that the foreign make of the car and the description of the tattoos on Respondent's arms came from the uncalled witness alone. In any case, Ms. Filmon thoroughly described the car at trial, including the Florida license plate. She also identified Respondent in both the lineup and in court. With Ms. Filmon's testimony and the ample circumstantial evidence linking Respondent to the crime, there is no reasonable probability that the outcome of the trial would have been different without the minimal hearsay. Furthermore, defense counsel introduced the police report to show the jury the ways in which the description of the robber *differed* from that of Respondent. This was a valid trial strategy, and should not be the basis of a finding of ineffective assistance of counsel. *See id.*

Finally, Detective Medlar's report does not refer to the armed robbery in Clarendon or state that Respondent committed that crime. The PCR court's ruling on that basis is therefore clearly erroneous.[2]

---

2. The PCR court apparently confused Detective Medlar's report with one made by Detective Stanfield, which was not introduced at Respondent's trial.

## II. Failure to Object or Move for Mistrial Based on Reference to Other Crimes

The PCR court also ruled defense counsel was ineffective in failing to object or move for a mistrial based on numerous references by police officers to other crimes. We address these references separately below.

### A. Clarendon and Jasper County Robberies

■ Most of the references to other crimes were made in the course of the officers describing their pursuit of the vehicle involved in the various robberies in the tri-county area that day, as set forth above.[3] Specifically, the PCR court found these statements concerning the other robberies constituted hearsay and they were not established by clear and convincing evidence and therefore were not admissible under any of the exceptions in *State v. Lyle*, 125 S.C. 406, 118 S.E. 803 (1923). The State asserts three bases for admitting the statements: (1) they are not hearsay, (2) they fall into a *Lyle* exception, and (3) they form part of the *res gestae*. We agree the statements are not hearsay and do not address the State's other grounds for admittance.

■ Evidence is not hearsay unless it is an out of court statement offered to prove the truth of the matter asserted. *State v. Brown*, 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994) (internal citations omitted). An out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken. *Id.* In *Brown*, the Court held police officers' testimony about complaints they had received in the neighborhood prior to setting up their surveillance was admissible for the nonhearsay purpose of explaining why officers began their surveillance of defendant's apartment. The officers' statements here were similar to those in *Brown* in that in both cases the officers were explaining their actions in pursuing the defendants and the statements were not offered for their truth.

---

3. The references to other crimes not taking place that same day are addressed in part II.B.

### B. Rap Sheet Testimony

During cross examination, defense counsel asked Detective Stanfield whether he ran a license check on Respondent. Counsel's intent was to elicit from the officer the fact that Respondent was driving under suspension, to explain why Respondent ran. The following dialogue ensued:

A: A license check? Yes, sir, I ran a rap sheet and—

Q: Did the Defendant have—the Defendant was driving under suspension, was he not?

A: I believe there was some type of violation, also.

Q: I—

The Court: Wait just a minute. Wait a minute. Come forward, please.

During the subsequent bench conference, the court admonished Detective Stanfield and stated, "No harm has been done in my opinion, but you came dangerously close to jeopardizing this trial...."

Evidence of other crimes or bad acts is inadmissible to show propensity to commit a crime. Rule 404(b), SCRE. The PCR court ruled counsel was ineffective in failing to act to protect his client's interests when Detective Stanfield referred to Respondent's "rap sheet" and "some type of violation." The State has not appealed that ruling. It is therefore the law of the case and this Court will not consider it. *ML–Lee Acquisition Fund v. Deloitte & Touche*, 327 S.C. 238, 489 S.E.2d 470 (1997).

### CONCLUSION

We reverse the PCR court's ruling that defense counsel was deficient in waiving Respondent's right to cross examine witnesses and in not moving for a mistrial or objecting when witnesses for the State referred to other armed robberies that took place that day. Because the State has not appealed the PCR court's ruling that counsel was deficient in failing to protect his client's interests when a witness referred to Re-

spondent's "rap sheet," that ruling is the law of the case, and Respondent is entitled to a new trial.

**AFFIRMED IN PART; REVERSED IN PART.**

FINNEY, C.J., TOAL, MOORE, and WALLER, JJ., concur.