THIS
 OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 The State, Respondent,
 v.
 Alti Monte Livingston
 Haskell, Appellant.
 
 
 

Appeal From Abbeville County
 Roger L. Couch, Circuit Court Judge
Unpublished Opinion No.  2009-UP-165
Heard November 6, 2008  Filed April 13,
 2009
AFFIRMED

 
 
 
 Appellate Defender Kathrine H. Hudgins, of the South Carolina
 Commission on Indigent Defense, of Columbia, for Appellant. 
 Attorney General Henry Dargan McMaster, Chief Deputy Attorney
 General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior
 Assistant Attorney General Harold M. Coombs, Jr., Office of the Attorney
 General, all of Columbia; and Solicitor Jerry W. Peace, of Greenwood, for
 Respondent.
 
 
 

WILLIAMS, J.:  In this criminal case, Alti Monte
 Livingston Haskell (Haskell) appeals the trial court's decision to admit evidence over an objection of hearsay and its
 decision not to grant a mistrial.  We affirm. 
FACTS
Haskell and his co-defendant Clarence Harrison (Harrison) were
 tried for the shooting of Roderick Gartrell (Victim).  On February 10, 2004,
 Torey Brown (Brown) picked up Victim in Georgia and drove him to Abbeville,
 South Carolina.  While in Abbeville, Brown and Victim visited Harrison and
 Brown's girlfriend, Kytraundra Cole (Cole).  Cole resided in the Hickory
 Heights apartment complex, which is known as the Village.    
Shortly after Brown and Victim arrived at Cole's apartment, Brown
 left and went to the store while Victim walked through the Village.  Along the
 way, Victim encountered Harrison.  According to Victim, Harrison suggested they
 go to Cole's apartment and wait there for Brown to return from the store.  As
 Victim approached Cole's apartment, an individual wearing a white bandanna,
 which covered the individual's face from the nose down, jumped from nearby
 bushes and said, "Give it up."  Victim was shot in the mouth before
 he could respond.  
Detective
 John Smith (Detective Smith) began investigating Haskell based upon Brown's
 statements that Victim
 implicated Haskell as the shooter.  Due to his apparent involvement in the
 shooting, Haskell was indicted for assault and battery with intent to kill,
 attempted armed robbery, and possession of a weapon during the commission of a
 violent crime.  Haskell and co-defendant
 Harrison were tried together.  Haskell was found guilty on all charges and sentenced to an aggregate term
 of twenty years imprisonment.  This appeal followed.
LAW/ANALYSIS
On
 appeal, Haskell argues the trial court erred in the following ways: (1)
 refusing to suppress Detective Smith's testimony that Brown stated Victim said
 Haskell was the shooter; (2) failing to grant a mistrial when Victim testified
 the co-defendant had just been released from jail; and (3) failing to grant a
 mistrial when Cole testified the solicitor told her, prior to her testimony
 before the jury, that she could not assert her Fifth Amendment[1] right against self-incrimination. 
I. Detective Smith's
 testimony 
During Harrison's
 cross-examination of Detective Smith, the latter testified that Brown stated
 Victim said Haskell was the shooter.  Haskell objected to this testimony on the
 ground of hearsay.  Harrison argued Detective Smith's testimony was not hearsay
 because it was not being offered to prove the truth
 of the matter asserted.  Rather, Harrison contended, the testimony was
 being offered to show Detective Smith began investigating Haskell based upon
 Brown's statements.  The trial court allowed the testimony.  
An appellate court is bound by the trial court's factual findings
 unless they are clearly erroneous.  State v. Wilson, 345 S.C. 1, 5-6,
 545 S.E.2d 827, 829 (2001).  The
 admission of evidence is within the sound discretion of the trial court.  State
 v. Pittman, 373 S.C. 527, 577, 647 S.E.2d 144, 170 (2007).  To constitute
 an abuse of discretion, the conclusions of the trial court must lack
 evidentiary support or be controlled by an error of law.  Id. 
 Additionally, improper admission of hearsay testimony constitutes
 reversible error only when the admission causes prejudice. State v. Mitchell, 286 S.C. 572, 573, 336 S.E.2d 150, 151 (1985).
Hearsay is an out of court statement offered to prove the
 truth of the matter asserted in the statement.  Rule 801(c), SCRE.  The rule
 against hearsay prohibits the admission of an out of court statement to prove
 the truth of the matter asserted unless an exception applies. Rule 802, SCRE. 
 However, an out of court statement is not hearsay if it is offered to explain
 why a government investigation was undertaken.  State v. Brown, 317 S.C.
 55, 63, 451 S.E.2d 888, 894 (1994).   
In the present
 case, Detective Smith's testimony regarding Brown's statements explained the
 basis for Detective Smith's investigation of Haskell and Harrison. 
 Specifically, Detective Smith was asked, "And [Brown's statements were] a
 basis for you making the case?"  Detective Smith replied, "That was
 the first step."  Detective Smith further testified he believed Brown when
 Brown implicated Haskell.  Thus, Detective Smith's testimony does not
 constitute hearsay, and therefore, the trial court did not commit reversible
 error by admitting it.  See id. (holding police officers'
 testimony regarding complaints they had received prior to establishing surveillance
 of defendant's residence was nonhearsay because it was admitted to explain why
 officers began their surveillance); see also Webb v. Elrod, 308
 S.C. 445, 449, 418 S.E.2d 559, 562 (Ct. App. 1992) ("Proof of a statement
 introduced for the purpose of showing a party relied and acted upon it is not
 objectionable on the ground of hearsay.").
Furthermore, the statements relate to Haskell's character and do
 not constitute hearsay.  German v. State, 325 S.C. 25, 28, 478 S.E.2d
 687, 688 (1996).[2] 
 In German, the petitioner had been convicted of a drug offense.  Id. 
 at 27, 478 S.E.2d at 688.  During the trial, an undercover agent testified he
 received several tips that the petitioner was distributing or selling drugs.  Id. 
 These statements specifically referred to the petitioner and not to drug
 activity in general.  Id.  The South Carolina Supreme Court explicitly
 stated that the statements were not objectionable as hearsay but were comments
 on the petitioner's character.  Id. at 28, 478 S.E.2d at 688.  Likewise,
 Detective Smith's testimony that Brown
 stated Victim said Haskell was the shooter was not
 objectionable on hearsay grounds.   See also Rhodes v. State,
 349 S.C. 25, 31, 561 S.E.2d 606, 609 (2002) (holding testimony from the
 victim's friend that he gave the victim a yearbook with the defendant's picture
 in it because the friend had heard rumors that the
 defendant was involved in shooting "a guy and a girl" was not
 objectionable on hearsay grounds but was
 character evidence). 
II. Mistrial based on Victim's
 testimony 
During cross-examination by the State, Victim was asked why he had
 visited Abbeville.  Victim responded, "Oh because . . . Brown, me and . .
 . . [Harrison] were friends for a long time, and I think [Harrison] had just
 got out of jail, or [Brown], or someone."  Harrison made a motion for a
 mistrial, and Haskell joined in the motion.  The trial court denied this motion
 but issued a curative instruction.  
The decision to grant or deny a mistrial is within the sound discretion of the trial court.  State v. White, 371
 S.C. 439, 443-44, 639 S.E.2d 160, 162-63 (Ct. App. 2006).   The trial court's
 decision will not be overturned on appeal absent an abuse of discretion
 amounting to an error of law.  Id.  South Carolina courts favor the
 exercise of wide discretion of the trial
 court in determining the merits of such a motion in each individual case.  Id.  It is only in cases in which there is an abuse of discretion resulting in
 prejudice to the defendant that this Court will intervene and grant a new
 trial.  Id.  
A manifest necessity must exist for the trial court to discharge
 the jury and declare a mistrial.  Id.  However, the trial court is left
 to determine, in its discretion, whether, under all the circumstances of each
 case, such necessity exists.  Id.  The mistrial should be granted only
 if there is a manifest necessity or the ends of public justice are served.  Id.  The trial court should first exhaust other methods to cure possible prejudice
 before declaring a mistrial.  Id.
In this case, even if it is assumed the trial court's
 decision not to declare a mistrial was an abuse of discretion, Haskell cannot
 show resulting prejudice.  Victim testified that he thought Harrison, Brown, or
 someone else was released from jail.  Victim made no mention of Haskell.  Thus,
 the jury was not told Haskell was recently released from jail.  Consequently,
 assuming Victim's testimony did result in prejudice to Harrison or Brown by
 painting them as criminals, this prejudice did not carry over to Haskell
 because his name was never mentioned.  
Additionally, the
 trial court gave a curative instruction to the jury by striking Victim's answer
 and ordering the jury not to consider it "in any fashion when reaching a
 verdict . . . ."  It is well established that a curative instruction to the jury to disregard incompetent evidence and not to
 consider it during deliberation is deemed to cure any alleged error in its
 admission, even in criminal cases.  Id. at 445, 639 S.E.2d at 163.  
In the present
 case, the trial court's curative instruction was sufficient to cure Victim's
 vague statement that he believed Harrison, Brown, or some other individual had
 gotten out of jail.  Thus, the trial court's decision not to declare a mistrial
 was not reversible error. 
III. Mistrial based on
 Cole's Fifth Amendment right
Prior
 to Cole's testimony, and while the trial court was in recess, Cole got the solicitor's
 attention as the solicitor was walking into court.  Cole informed the solicitor
 she did not wish to testify and asked if it was possible for her not to
 testify.  In this context, Cole asked the solicitor whether she could invoke
 her Fifth Amendment right against self-incrimination.  Apparently, the
 solicitor did not address Cole's question regarding her Fifth Amendment right
 but told Cole she would be called to testify.[3] 
 These facts came to light after Cole had testified.  Harrison moved for a mistrial,
 and Haskell joined in the motion.  The trial court denied this motion.  
As explained above, the decision to grant or deny a mistrial is
 within the sound discretion of the trial court, and it is only in cases in
 which there is an abuse of discretion resulting in prejudice to the defendant
 that this Court will intervene and grant a new trial.  Id. at 443-44,
 639 S.E.2d at 162-63.  
Haskell argues the trial court should have granted his mistrial
 motion because Cole erroneously believed she could not assert her Fifth
 Amendment right.  Haskell contends he was prejudiced because Cole had provided
 a statement to an officer prior to her testimony and she was precluded from
 providing truthful testimony at the trial, which may have contradicted her
 earlier statement to the police, due to her belief that she could not assert
 her Fifth Amendment right.  
The Fifth Amendment protects an individual against being
 involuntarily called as a witness against herself in a criminal prosecution. State
 v. Hook, 348 S.C. 401, 415, 559 S.E.2d 856, 863 (Ct. App. 2001).  The Fifth
 Amendment also allows an individual to refuse to answer questions when the
 answer will tend to subject the person to criminal responsibility.  Id. 
In the present case, Cole wished to exercise her Fifth Amendment
 protection solely because she did not want to be involved in the trial.  When
 asked by the solicitor, "And at that time you communicated to me that you
 didn't want to testify" outside the presence of the jury, Cole responded, "Yes." 
 The solicitor also posed the following question, "And you really never
 have wanted anything to do with [the trial] have you?" Cole responded, "No
 sir."  Thus, the basis for Cole's hesitation to provide testimony at trial
 was her desire not to take part in the trial.  
The Fifth Amendment does not operate to provide blanket protection
 to those individuals who would prefer not to participate in a case.  See McCarthy v. Arnstein, 266 U.S. 34, 40 (1924) ("[T]he privilege
 [against self-incrimination] . . . applies . . . wherever the answer might tend to
 subject to criminal responsibility him
 who gives it.").  Additionally, if potential witnesses could claim Fifth
 Amendment protection because of a desire to avoid testifying, it would be
 tremendously difficult to conduct trials.  The trial court's denial of the
 motion for mistrial was proper.  
CONCLUSION
Accordingly,
 the trial court's decision is 
AFFIRMED.  
GEATHERS,
 J., concurs in result only in a separate opinion. 
PIEPER,
 J., dissenting in a separate opinion.
GEATHERS,
 J.:  I concur in the result of the
 instant case because I believe we are bound by the Supreme Court's decision in State
 v. Brown, 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994) (out of court
 statement is not hearsay if it is offered to explain why a government
 investigation was undertaken).
PIEPER,
 J.:  I respectfully dissent.  I
 believe the statement at issue was inadmissible hearsay.  In my opinion, the
 offered explanation as to why the investigation was undertaken was not at issue
 in this case and would improperly expand the use of this otherwise narrow
 application of the law.  Moreover, I do not find the evidence was character
 evidence.  Accordingly, because the evidence as to the identity of the shooter
 was extremely weak, I would not find the error was harmless beyond a reasonable
 doubt and would reverse.

[1] The Fifth Amendment to the United States Constitution
 states in relevant part, "No person shall be .
 . . compelled in any criminal case to be a witness against himself . . . ." U.S. Const. amend.
 V.
[2] In German, our Supreme Court concluded it had
 erroneously decided the case of State v. Pollard, 260 S.C. 457, 196
 S.E.2d 839 (1973).  In Pollard, a police officer was permitted to
 testify regarding information he had received from other persons, which led to
 the defendant's arrest. Pollard, 260 S.C. at 460, 196 S.E.2d 840.  The
 police officer testified, in effect, that he had "received information
 from some other source or witnesses as the basis for his signing the warrant
 [for the defendant]."  Id.  Our Supreme Court reversed the
 conviction and ordered a new trial, holding: "The testimony of the
 officer, that he signed the warrant upon the basis of information received from
 witnesses who did not testify, was clearly hearsay and inadmissible." Id. 
 However, in German our Supreme Court held that Pollard was
 incorrectly decided and the statements were not objectionable as hearsay but
 were objectionable as improper comments on the defendant's character.  German, 325 S.C. at 28
 n.2, 478 S.E.2d at 688 n.2.
[3] According to Cole, the solicitor told her she could
 not invoke the Fifth Amendment right against self-incrimination. According to
 the solicitor, he did not address Cole's question regarding her Fifth Amendment
 right.  The trial court found the solicitor's testimony more credible than
 Cole's testimony.