800 S.E.2d 138

The STATE, Respondent,

v.

Clyde Bowen DAVIS, Appellant.

Appellate Case No. 2013-002207
Opinion No. 5476

Court of Appeals of South Carolina.

Heard December 6, 2016
Filed March 29, 2017
Rehearing Denied June 20, 2017

Ryan Lewis Beasley, of Greenville, for Appellant.

Attorney General Alan McCrory Wilson, Assistant Deputy Attorney General Samuel Creighton Waters, Assistant Attorney General Joshua Richard Underwood, and Assistant Attorney General James Clayton Mitchell, III, all of Columbia, for Respondent.

WILLIAMS, J.:

Clyde Bowen Davis appeals his conviction for conspiracy to traffic 100 grams or more but less than 200 grams of methamphetamine, arguing the circuit court erred in (1) refusing to dismiss Count II of the superseding indictment, (2) failing to find the State abused the grand jury process, (3) failing to find the State withheld material, exculpatory evidence, (4) admitting an unduly suggestive out-of-court identification, and (5) admitting an investigator's testimony that included hearsay from a confidential informant (CI). We affirm.

## FACTS/PROCEDURAL HISTORY

From 2009 to 2011, law enforcement officials were involved in "Operation Icehouse," a complex, interagency investigation into the sale of methamphetamine in upstate South Carolina. During the operation, investigators used CIs to make controlled purchases of the drug from suspected dealers, and they soon learned Michael Robinson was selling methamphetamine he had purchased from either Amy Brock or Nicholous "Nick" Dendy.[1]

In September or October 2010, Investigator Chad Ayers and another officer with the Greenville County Sheriff's Office met with Brock at her Greenville home. Brock admitted she had been buying methamphetamine from Dendy after meeting him through Robinson. During a typical deal, Brock told the investigators that Dendy would either come inside her home or meet her outside in the driveway. After giving money to him, Brock alleged Dendy would take it to a silver car, which she believed was being driven by Dendy's cousin, and retrieve the methamphetamine for her. Brock stated that, although she never learned his name, she had seen Dendy's cousin in his car when she met Dendy in the driveway to buy methamphetamine.

About a month after their first visit, Investigator Ayers and another officer returned to Brock's home. They showed her a color photograph of Clyde Davis from a copy of his South Carolina Department of Motor Vehicles (DMV) driving record and folded down any identifying information. When Investigator Ayers asked Brock who the man was, she identified him as Dendy's cousin. Then, on or around September 8, 2010, South Carolina Law Enforcement Division (SLED) Agent Brunson Ashley Asbill had a CI complete a controlled purchase of methamphetamine from Davis at Davis's home.

On December 13, 2011, the state grand jury returned a superseding indictment against Davis relating to his alleged

---

1. Through controlled purchases by other CIs, investigators also found Brian Sekerchak had been buying methamphetamine from Brock and selling it to others. Additionally, investigators discovered Joshua Byers had sold methamphetamine to Brock three to five times and he once bought an ounce of the drug from Dendy.

involvement in the sale of methamphetamine.[2] Count I accused Davis of conspiracy to traffic 100 grams or more but less than 200 grams of methamphetamine in violation of subsection 44-53-375(C)(3) of the South Carolina Code (Supp. 2016), in Greenville and Pickens counties with Dendy, Brock, Robinson, Sekerchak, and Byers. Count II alleged Davis distributed methamphetamine in Greenville County in violation of subsection 44-53-375(B) of the South Carolina Code (2010) (amended 2016), on or around September 8, 2010.

During pretrial motions, Davis moved to dismiss the superseding indictment, arguing the state grand jury had no subject matter jurisdiction and the State presented no evidence amounting to probable cause on Count II. Additionally, Davis filed a motion to sever Count I from Count II of the indictment and a *Brady v. Maryland*[3] motion, alleging the State failed to disclose information relating to the CIs in the investigation. Davis also moved to suppress Brock's out-of-court identification of Davis, arguing the identification process was unduly suggestive.

At the motions hearing, the circuit court denied Davis's motion to dismiss the superseding indictment; however, the State consented to Davis's motion to sever the charges and agreed to proceed only on Count I for conspiracy to traffic methamphetamine. Additionally, the court denied Davis's *Brady* motion. After conducting a *Neil v. Biggers*[4] hearing, the court also denied Davis's motion to suppress Brock's out-of-court identification of Davis.

The case was called for a jury trial in Greenville County on September 17, 2013. During the two-day trial, each of Davis's alleged co-conspirators—all having pled guilty to various related charges—testified for the State in exchange for a recommendation for a lesser sentence. The State began its "historical case," of what law enforcement coined as the "Greenville Conspiracy," with testimony from two CIs involved in pur-

---

2. The state grand jury filed its first indictment on November 8, 2011. Count I of that indictment accused Davis of conspiring to traffic twenty-eight grams or more but less than 100 grams of methamphetamine.

3. 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

4. 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972).

chases of methamphetamine from Robinson, Sekerchak, Byers, and Dendy, and from a cooperating defendant in a separate trafficking conspiracy who had bought methamphetamine from Sekerchak and Brock.

Byers, one of Brock's suppliers, testified he met Davis one time through his cousin's boyfriend in a vehicle at a local car wash. While Byers sat in the back seat, he claimed Davis gave approximately one gram of methamphetamine to his cousin's boyfriend in the driver seat. Byers said his cousin's boyfriend then passed the drugs back to him, which he later resold.

Sekerchak testified he and his brother purchased methamphetamine from Brock and Dendy on numerous occasions, which they would resell. Sekerchak stated he waited in the car while his brother went into Brock's house to give them the money. According to Sekerchak, Davis drove up in either a black Honda or silver Dodge Charger and Dendy came outside to exchange the money for methamphetamine. Sekerchak stated Dendy and Brock sometimes mentioned they had to wait on Davis to deliver the drugs.

Robinson testified he purchased an "eight-ball," or 3.5 grams, of methamphetamine a week from Dendy, which he resold to others for about a year. During that period, Robinson also said he bought about 1.5 grams of methamphetamine from Brock every week. Robinson maintained he never met Davis.

Brock testified she bought between a "half-eighth" to a quarter ounce, or approximately 7.0 grams, of methamphetamine up to several times a week from Dendy and his cousin from spring 2010 to October or November 2010. She stated she was able to see the person in a silver car on numerous occasions because roughly half of the deals occurred in her driveway during daylight hours. When the State showed Davis's DMV driving record to Brock in the courtroom, she reaffirmed her prior identification of Davis as Dendy's supplier.

Dendy testified he sold between 3.0 and 3.5 grams of methamphetamine, which he got from Davis, to Robinson on at least fifteen occasions. Dendy stated he first met Brock during a visit to Robinson's home. After they developed a buyer-seller relationship, Dendy stated he would go to Brock's

house to collect her money and then call Davis to bring the amount of methamphetamine that Brock requested. Dendy testified Brock asked for a quarter ounce of the drug nine to ten times and an eight-ball five to six times. When Davis arrived, Dendy said he would go out to meet him and exchange the money for methamphetamine. Dendy confirmed that Brock would sometimes come outside next to where he and Davis completed the transactions. On cross-examination, Dendy admitted Davis was not his cousin.

Last, the State called Agent Asbill, the SLED investigator who initiated the CI's undercover purchase of methamphetamine from Davis. When the State began to elicit testimony from Agent Asbill about the CI's purchase, Davis made multiple objections that such testimony was inadmissible hearsay from a nontestifying witness and violated his confrontation rights. The circuit court overruled the objections, stating Agent Asbill could testify about his personal observations and experiences during the controlled purchase.

During his testimony, Agent Asbill did not reveal the CI's identity to the jury. Agent Asbill testified that he and another officer searched the CI, placed a transmitting device on him, and gave him documented government money. Thereafter, Agent Asbill stated that, while he was parked at a nearby school, the CI went to Davis's residence on Dobb Street, spent a period of time there, and received a phone call. Agent Asbill also noted he saw a silver Chrysler 300 in the area, but he did not see who was driving the car. The State then requested a bench conference outside the jury's presence to discuss its desire to ask Agent Asbill if he could identify the voices in the CI's wired recording of the controlled purchase. After Agent Asbill informed the circuit court that he could not determine who was speaking in the recording, the State conceded the issue. Once the jury returned, the following colloquy took place:

> The State: We were discussing a controlled purchase against the target Clyde Davis. What were the results of that controlled purchase?
>
> Agent Asbill: The confidential informant returned to us with a purchase of methamphetamine.
>
> The State: And how much methamphetamine was it?

Agent Asbill: Approximately 3.5 grams.

The State: And was that paid for with documented government funds?

Agent Asbill: That is correct.

The State: Is that the only controlled purchase attempted against Clyde Davis?

Agent Asbill: Yes, sir. The only one I'm aware of.

At the conclusion of trial, the jury found Davis guilty of conspiracy to traffic 100 grams or more but less than 200 grams of methamphetamine. The circuit court sentenced Davis to a mandatory twenty-five years' imprisonment and issued a $50,000 fine. Davis subsequently filed a "motion for verdict in arrest of judgment" and a motion for a new trial. In his motions, Davis argued Agent Asbill's testimony regarding the CI's alleged undercover purchase was inadmissible hearsay and violated his confrontation rights. Davis also contended Brock's out-of-court identification was a result of unduly suggestive police tactics, and thus, was inadmissible. The circuit court denied both motions by written order on October 3, 2013. This appeal followed.

## ISSUES ON APPEAL

I. Did the circuit court err in refusing to dismiss Count II of the superseding indictment?

II. Did the circuit court err in failing to find the State abused the state grand jury process?

III. Did the circuit court err in failing to find the State violated Davis's due process rights under *Brady*?

IV. Did the circuit court err in admitting Brock's out-of-court identification of Davis?

V. Did the circuit court err in admitting Agent Asbill's testimony concerning the CI's alleged controlled purchase from Davis?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Jenkins*, 412 S.C. 643, 650, 773 S.E.2d 906, 909 (2015). The decision of whether to admit or exclude evidence is within the sound discretion of the circuit

court. *State v. Jackson*, 384 S.C. 29, 34, 681 S.E.2d 17, 19 (Ct. App. 2009). Likewise, the determination of whether to admit an eyewitness's identification is at the discretion of the circuit court. *State v. Moore*, 343 S.C. 282, 288, 540 S.E.2d 445, 448 (2000). This court will not disturb the circuit court's admissibility determinations absent a prejudicial abuse of discretion. *State v. Adkins*, 353 S.C. 312, 326, 577 S.E.2d 460, 468 (Ct. App. 2003). "An abuse of discretion arises from an error of law or a factual conclusion that is without evidentiary support." *State v. Irick*, 344 S.C. 460, 464, 545 S.E.2d 282, 284 (2001).

## LAW/ANALYSIS

### I. Count II of the Superseding Indictment

█ Davis first argues the state grand jury lacked subject matter jurisdiction over Count II because the charge for distribution of methamphetamine in Greenville County did not have multi-county significance.[5]

During oral argument, Davis's counsel informed the court that Count II was eventually dismissed after the filing of this appeal. Therefore, we find any issue arising from Count II of the superseding indictment is moot. *See Sloan v. Greenville Cty.*, 356 S.C. 531, 552, 590 S.E.2d 338, 349 (Ct. App. 2003) ("[M]oot appeals result when intervening events render a case nonjusticiable. ... A case becomes moot when judgment, if rendered, will have no practical legal effect upon [the] existing controversy." (second alteration in original) (internal citations omitted)).

---

5. At the outset, the State points out that Davis only served a notice of appeal from the circuit court's order denying his motions for verdict in arrest of judgment and a new trial. Thus, the State contends Issues 1–3 are not preserved for this court's review because Davis did not raise them to the circuit court in his post-trial motions. Upon our review of the case law, we do not believe Davis was required to file a motion for a new trial to preserve arguments previously presented to and passed upon by the circuit court. *See State v. Holliday*, 333 S.C. 332, 339, 509 S.E.2d 280, 283 (Ct. App. 1998) ("A motion for new trial is not necessary to preserve for review on appeal a question which has been fairly and properly raised in the trial court and passed upon there." (quoting *Bowers v. Watkins Carolina Express, Inc.*, 259 S.C. 371, 376, 192 S.E.2d 190, 192 (1972))).

## II. Abuse of the Grand Jury Process

██ Davis next asserts the circuit court erred in refusing to dismiss the superseding indictment due to several instances of the State's abuse of the grand jury process.

██ "A grand jury is not a prosecutor's plaything and the awesome power of the State should not be abused but should be used deliberately, not in haste." *State v. Capps*, 276 S.C. 59, 61, 275 S.E.2d 872, 873 (1981). However, "[g]rand jury proceedings are presumed to be regular unless clear evidence indicates otherwise." *State v. Moses*, 390 S.C. 502, 520, 702 S.E.2d 395, 405 (Ct. App. 2010).

In his motion to dismiss the superseding indictment, Davis stated, "Count II should also be dismissed because the State abused the grand jury process by not presenting evidence that would amount to probable cause." Specifically, Davis claimed the State presented no evidence concerning the CI's veracity or reliability in the alleged controlled purchase of methamphetamine.

On appeal, however, Davis maintains the State abused the state grand jury proceedings when it allowed Investigator Ayers to falsely testify that Agent Asbill's CI completed another controlled purchase from Davis at the suggestion of Dendy.[6] Moreover, Davis contends on appeal that the State had Brock and Investigator Ayers falsely testify before the state grand jury that Brock identified Davis through a "photo line-up"—suggesting a line-up including more than one person—when she was only shown Davis's photograph from his DMV record.

Because Davis argues different issues on appeal from the one presented to the circuit court, we find they are not preserved for our review. *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review."). To the extent Davis again contends on appeal that the State abused the grand jury process by failing to produce sufficient evidence amounting to

---

6. We address the merits of this claim under *Brady* in Part III, *infra*.

probable cause on Count II, we find the issue is moot as discussed in Part I, *supra*.

## III. Due Process

Davis argues the circuit court erred in failing to dismiss the indictment when the State failed to preserve and turn over material exculpatory evidence in violation of his due process rights. We disagree.

"The *Brady* disclosure rule requires the prosecution to provide the defendant with any evidence in the prosecution's possession that may be favorable to the accused and material to guilt or punishment." *State v. Anderson*, 407 S.C. 278, 286, 754 S.E.2d 905, 909 (Ct. App. 2014). "[A]n individual asserting a *Brady* violation must demonstrate the evidence was (1) favorable to the accused; (2) in the possession of or known by the prosecution; (3) suppressed by the State; and (4) material to the accused's guilt or innocence, or was impeaching." *Id.* at 287, 754 S.E.2d at 909. "Impeachment or exculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Von Dohlen*, 322 S.C. 234, 241, 471 S.E.2d 689, 693 (1996).

At the pretrial motions hearing, Davis claimed the State failed to turn over requested discovery pursuant to Rule 5, SCRCrimP, regarding an alleged drug transaction between Agent Asbill's CI and Dendy. Investigator Ayers testified to the state grand jury that law enforcement sent the CI to purchase methamphetamine from Dendy who, in turn, sent the CI to purchase the drug from his supplier, Davis. Therefore, Davis argued evidence concerning this purchase was exculpatory because it showed the CI never completed a transaction with Davis and that no conspiracy agreement existed between the alleged co-conspirators.

Upon our review of the record, we find Davis failed to establish that his due process rights were violated under *Brady*. We first note the State claimed it possessed no discovery to offer to the defense on this alleged transaction because it was aborted and never occurred. In addition, the State maintained the CI only completed one controlled purchase from Davis, which is the underlying crime for Count II of the

indictment for distribution of methamphetamine. Therefore, even if evidence that a transaction between the CI and Dendy did not occur is favorable to the defense, we find Davis has failed to show it was in the State's possession or somehow suppressed.

Furthermore, the State did not call the CI as a witness, and it did not discuss this alleged transaction at trial. We fail to see how the fact that Davis did not sell methamphetamine to the CI on this particular occasion would have led to a different result regarding his guilt or innocence on his conspiracy to traffic methamphetamine charge with his five alleged co-conspirators. *See Von Dohlen*, 322 S.C. at 241, 471 S.E.2d at 693. Therefore, we affirm the circuit court's denial of Davis's *Brady* motion.

## IV. Brock's Identification

Davis contends the circuit court erred in failing to suppress Brock's out-of-court identification of him to investigators. We disagree.

"A criminal defendant may be deprived of due process of law by an identification procedure [that] is unnecessarily suggestive and conducive to irreparable mistaken identification." *State v. Traylor*, 360 S.C. 74, 81, 600 S.E.2d 523, 526 (2004). "An in-court identification of an accused is inadmissible if a suggestive out-of-court identification procedure created a very substantial likelihood of irreparable misidentification." *Id.* "Single person show-ups are particularly disfavored in the law." *Moore*, 343 S.C. at 287, 540 S.E.2d at 448.

In *Neil v. Biggers*, the United States Supreme Court set forth a two-pronged test to determine whether due process requires the suppression of an eyewitness identification. 409 U.S. at 198–200, 93 S.Ct. 375. To ensure due process, *Neil v. Biggers* requires courts to assess, on a case-by-case basis, the following: (1) whether the identification resulted from unnecessary and unduly suggestive police procedures, and if so, (2) whether the out-of-court identification was nevertheless so reliable that no substantial likelihood of misidentification existed. *State v. Liverman*, 398 S.C. 130, 138, 727 S.E.2d 422, 426 (2012).

Under the totality of the circumstances, the factors to be considered in assessing the reliability of an otherwise unduly suggestive identification procedure are: (1) the witness's opportunity to view the perpetrator at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the perpetrator, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation.

*Id.*

In the instant case, following its in camera hearing, the circuit court seemed to find the investigators' strategy of showing only one photograph of Davis to Brock was unduly suggestive and "concerning" because Davis "was already known to law enforcement" prior to the identification. Moving to the second prong of the *Neil v. Biggers* test, the court found that, under the totality of the circumstances, Brock's out-of-court identification was reliable enough to submit to the jury. In its analysis, the court found Brock identified Davis with a high level of certainty. Moreover, the court noted Brock had numerous opportunities to see Davis, and at least part of the time, she observed him at a very close range, albeit through a car windshield. The court also explained a great deal of time had not passed between Brock's identification and the last time she had seen Davis.

On appeal, Davis argues the court abused its discretion in its analysis of the reliability factors. First, Davis asserts Brock never spoke to Dendy's supplier or observed him for a considerable period of time. Second, Davis contends Brock's degree of attention was insufficient because she was merely a casual observer and admitted to being under the influence of methamphetamine during the drug deals. Third, Davis points out Brock gave no prior description of Dendy's supplier to authorities. Fourth, Davis argues Brock never revealed her level of certainty to authorities after making the identification. Fifth, Davis claims the length of time of a month or two between when investigators first contacted her and the identification was substantial.[7]

---

7. While concurring with the circuit court's analysis, the State concedes Brock never provided a physical description of Dendy's cousin before

While meritorious disagreement exists on the *Neil v. Biggers* reliability factors, we cannot say the circuit court committed a prejudicial abuse of discretion in admitting Brock's prior identification of Davis because its decision was supported by the evidence. Brock testified she saw Dendy's cousin on multiple occasions with the car window down during daylight hours. Brock's level of certainty was high because she directly identified the man in the photograph as Dendy's cousin when investigators asked who it depicted. Indeed, the investigators did not suggest a response by asking Brock if it was Dendy's cousin. Moreover, given that Brock testified the five-to-ten minute transactions took place several times a week over the span of several months and she saw Dendy's cousin on about half of those occasions, the length of time between her encounters with the suspect and her identification to the investigators was not so prolonged to be unreliable. Therefore, we affirm the circuit court's decision to admit the identification.

## V. Agent Asbill's Testimony

 Davis argues Agent Asbill's testimony that the CI completed a controlled purchase at his residence was inadmissible hearsay and violated his confrontation rights. We agree.

" 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. As a general rule, hearsay is inadmissible unless an exception applies. Rule 802, SCRE; *see also* Rules 803 and 804, SCRE (providing exceptions to the hearsay rule).

In the instant case, Agent Asbill testified his CI went to Davis's residence, spent some time there, received a phone call, and returned to him with approximately 3.5 grams of methamphetamine. Agent Asbill also said the CI paid for the

the single photograph identification but claims the procedure was a "confirmation identification" accepted by our supreme court in *Liverman. See* 398 S.C. at 141–42, 727 S.E.2d at 427–28 (stating "[t]he suggestive nature of a show-up is mitigated by the witness's prior knowledge of the accused" and concurring with other jurisdictions that consider the procedure as "merely confirmatory"). Regarding the second factor, the State claims Brock had a high level of attention because she was a drug user who had a vested interest in knowing who was providing her with methamphetamine.

drugs with government funds. When the State questioned whether this was the only controlled purchase attempted against Davis, he replied, "Yes, sir."

During his testimony, however, Agent Asbill stated he was parked at a nearby school during the alleged transaction between the CI and Davis. Moreover, law enforcement had no visual surveillance of Davis's residence, and Agent Asbill told the circuit court he could not identify the voices in the CI's wired recording. Consequently, Agent Asbill had no personal knowledge concerning the CI's activities during the purchase of methamphetamine. As a result, Agent Asbill was allowed to relay to the jury the CI's multiple implied statements to him upon return for debriefing that he had, in fact, gone to Davis's residence and purchased methamphetamine.[8] Therefore, we find the circuit court erred in admitting the portion of Agent Asbill's testimony in which he had no personal knowledge of the CI's activities during the controlled purchase because it was inadmissible hearsay without an exception under our rules of evidence. *See* Rule 802, SCRE.

Furthermore, we find the admission of this portion of Agent Asbill's testimony violated Davis's constitutional right to confront witnesses against him. The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. CONST. amend. VI. This bedrock procedural guarantee is applicable to the states under the Fourteenth

---

**8.** Nevertheless, the State argues Agent Asbill never repeated any statements from the CI to the jury and that the facts of this case are similar to *State v. Sachs*, 264 S.C. 541, 216 S.E.2d 501 (1975). In *Sachs*, our supreme court found officers' testimony that the defendant's sister accompanied them to a courthouse, typed affidavits for search warrants, and delivered a package containing drugs to the defendant's home was not inadmissible hearsay. *Id.* at 567–68, 216 S.E.2d at 515. The court reasoned the testimony was based upon the officers' personal observations of the defendant's sister and no conversations between them were related to the jury. *Id.* In the instant case, however, Agent Asbill testified as to the CI's activities at Davis's residence that he did not personally observe from his car parked at a nearby school. Therefore, the jury could only infer from Agent Asbill's testimony that the CI communicated to him, in some form, that he successfully purchased methamphetamine at Davis's residence.

Amendment. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■■■ The United States Supreme Court has held the Confrontation Clause prohibits the admission of out-of-court testimonial statements of a witness unless the witness is unavailable to testify and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). The *Crawford* Court stated the "core class of 'testimonial' statements" includes: (1) ex parte in-court testimony or its functional equivalent, (2) extrajudicial statements contained in formalized testimonial materials, (3) statements made under circumstances that would lead an objective witness to reasonably believe that the statement would be available for use at a later trial, and (4) statements taken by police officers in the course of interrogations. *State v. Ladner*, 373 S.C. 103, 112, 644 S.E.2d 684, 688–89 (2007) (citing *Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354). However, the Court noted the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n.9, 124 S.Ct. 1354. Accordingly, "an out of court statement is not hearsay if it is offered for the limited purpose of explaining why a government investigation was undertaken." *State v. Brown*, 317 S.C. 55, 63, 451 S.E.2d 888, 894 (1994) (citing *United States v. Love*, 767 F.2d 1052, 1063 (4th Cir. 1985)).

We find the CI's implied statements to investigators that he completed a drug deal at Davis's residence were testimonial because an objective witness would reasonably believe the government would use such statements in a later trial—as they did in this case. *See Crawford*, 541 U.S. at 51–52, 124 S.Ct. 1354; *see also, e.g., United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004) ("Tips provided by confidential informants are knowingly and purposely made to authorities, accuse someone of a crime, and often are used against the accused at trial. The very fact that the informant is confidential—*i.e.*, that not even his identity is disclosed to the defendant—heightens the dangers involved in allowing a declarant to bear testimony without confrontation. The allowance of anonymous accusations of crime without any opportunity for cross-examination would make a mockery of the Confrontation

Clause."). Moreover, Agent Asbill's testimony about the controlled purchase was not offered for context or background information as to why authorities were investigating Davis. *See Crawford*, 541 U.S. at 59 n.9, 124 S.Ct. 1354; *Brown*, 317 S.C. at 63, 451 S.E.2d at 894. Upon our review of the record, we cannot locate any trial testimony from Agent Asbill providing background information such as the date of the alleged controlled purchase or how it played into the investigation of Davis and the other co-conspirators. Therefore, we find the CI's statements regarding the controlled purchase were offered to prove the truth of the matter asserted: Davis was a drug dealer. Because Davis had no opportunity to cross-examine the CI, we find the circuit court's admission of this hearsay violated Davis's Sixth Amendment right to confrontation.

## VI. Harmless Error

■ The State asserts any error in the admission of the hearsay was harmless. We agree.

"A violation of the Confrontation Clause is not per se reversible but is subject to a harmless error analysis." *State v. Gracely*, 399 S.C. 363, 375, 731 S.E.2d 880, 886 (2012) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

> Whether such an error is harmless in a particular case depends upon a host of factors.... These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and[ ] of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684, 106 S.Ct. 1431.

In this case, Agent Asbill's testimony about the CI's controlled purchase of 3.5 grams of methamphetamine had little significance to the State's case against Davis for conspiracy to traffic 100 grams or more of the drug with his five co-conspirators. Focusing on that charge, we find the State presented cumulative testimony from Brock, Dendy, and Sekerchak regarding Davis's involvement in the conspiracy. In-

deed, their testimony corroborated each other's allegation that Davis drove to Brock's home and delivered methamphetamine to Dendy on numerous occasions over a substantial period of time. Robinson also testified he purchased a large amount of methamphetamine from Dendy, who confirmed in his testimony that he was selling the drugs for Davis.

From the co-conspirators' testimony, the jury had more than enough evidence to find Davis conspired to traffic 100 grams or more of methamphetamine. Moreover, Davis rigorously cross-examined the co-conspirators, especially Dendy on the issue of whether Davis was his cousin. *Cf. Gracely*, 399 S.C. at 375–77, 731 S.E.2d at 886–87 (finding a Confrontation Clause error was not harmless when the circuit court disallowed the defendant from questioning his co-conspirators about the possible mandatory minimum sentences they avoided by testifying for the State because the case relied exclusively on their credibility). Upon our review of the entire trial transcript, we find the circuit court's error in admitting hearsay during Agent Asbill's testimony was harmless beyond a reasonable doubt.

## CONCLUSION

Based on the foregoing analysis, Davis's conviction for conspiracy to traffic methamphetamine is

**AFFIRMED.**

THOMAS and GEATHERS, JJ., concur.