312 Ga. 289
FINAL COPY

S20G1430.  THE STATE v. GILMORE.

WARREN, Justice.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]"  U.S. Const. Amend. VI. In *Crawford v. Washington*, 541 U.S. 36, 68 (124 SCt 1354, 158 LE2d 177) (2004), the United States Supreme Court held that the "admission of out-of-court statements that are testimonial in nature violates the Confrontation Clause unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination."  *Hester v. State*, 283 Ga. 367, 370 (659 SE2d 600) (2008) (citation and punctuation omitted).  We granted certiorari in this case to decide whether the Court of Appeals erred in holding that a video recording presumed to have no discernible audio, which depicts a now-deceased confidential informant ("CI") purchasing a

small bag of suspected methamphetamine from appellant David Lee Gilmore (a fact neither party disputes on appeal), contained testimonial statements prohibited by the Confrontation Clause. For the reasons that follow, we conclude that the video recording depicts the CI's nonverbal conduct but did not depict any nonverbal statements.[1] As a result, admission of the video recording was not barred by the Confrontation Clause, and we reverse the decision of the Court of Appeals.

1. *Background.*

(a) *Facts.*

The Court of Appeals summarized the relevant facts, as presented by the parties at an evidentiary hearing, as follows. In the summer of 2018, law enforcement officers with the Rome Floyd Metro Task Force suspected that Gilmore was a drug dealer and

---

[1] Because the question we asked upon granting certiorari pertains only to the admissibility of the nonverbal conduct depicted on the video recording at issue here, we do not address the admissibility of any audible statements that can be heard on the video recording. See *Martin v. Six Flags Over Ga. II, L.P.*, 301 Ga. 323, 332 n.6 (801 SE2d 24) (2017) (declining to address an issue on which this Court did not grant certiorari).

arranged for a CI to conduct a "controlled buy" of methamphetamine from him. See *State v. Gilmore*, 355 Ga. App. 536, 537-538 (844 SE2d 877) (2020). On July 20, 2018, officers attached a video camera to the CI's key ring, gave him a $20 bill, and sent him to Gilmore's house to purchase the drugs. See id. at 537. Officers followed the CI to Gilmore's house but did not witness the transaction. See id. After the controlled buy, the CI met the officers at a predetermined location and gave them a bag of suspected methamphetamine and the video camera he had been carrying on his key ring. See id. The video recording of the transaction shows Gilmore handing the CI a small bag of suspected methamphetamine and then Gilmore holding a $20 bill. See id.[2] On April 11, 2019, the CI, who was incarcerated, died by suicide.

(b) *Proceedings Below.*

---

[2] The trial court said that it "could not make out what they were saying on the video" and that "it was mumbled," and the Court of Appeals stated that "[i]t is undisputed . . . that, while the recording includes audio, the quality is poor and any verbal statements made during the alleged transaction are indiscernible." *Gilmore*, 355 Ga. App. at 537-538.

The next day, a Floyd County grand jury indicted Gilmore for multiple violations of the Georgia Controlled Substances Act, OCGA § 16-13-30 et seq., stemming from Gilmore's alleged July 2018 sale of methamphetamine to the CI.[3]   Before trial, the State filed two motions to admit the video recording of the controlled buy.  It argued that the video could properly be authenticated, even with the CI being unavailable, and that any hearsay statements in the video fell under the so-called "residual exception" to the hearsay rule.  See OCGA § 24-8-807.[4]

Gilmore opposed the motions, contending that admission of the video recording would violate his rights under the Confrontation

---

[3] Specifically, Gilmore was charged with one count each of selling methamphetamine, possession with intent to distribute methamphetamine, and possession of less than one gram of methamphetamine.

[4] OCGA § 24-8-807 provides for the admissibility of a hearsay statement "not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness" if
(1) The statement is offered as evidence of a material fact;
(2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
(3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

Clause of the Sixth Amendment to the United States Constitution because the CI was not available to testify at trial, Gilmore never had an opportunity to cross-examine the CI, and any statements that could be heard on the video recording — as well as any nonverbal conduct depicted in it — were testimonial statements. See *Crawford*, 541 U.S. at 68. After an evidentiary hearing, the trial court denied the State's motions to admit the video recording, finding that Gilmore never had an opportunity to cross-examine the CI and that the nonverbal statements depicted in the video were "testimonial in nature."[5]

The State appealed. See OCGA § 5-7-1 (a) (5) (giving the State the right to appeal directly a trial court order excluding evidence in criminal cases). The Court of Appeals affirmed the denial of the State's motions to admit the video recording, holding that the CI's "conduct constituted testimonial statements that are subject to and

---

[5] As explained more below in footnote 6, verbal or nonverbal statements made by a criminal defendant do not implicate the Confrontation Clause.

barred by the Confrontation Clause." *Gilmore*, 355 Ga. App. at 541.

Specifically, the court reasoned that

> the video recording of the confidential informant's movements during the controlled drug buy was made at the request of and with equipment supplied by law enforcement agents as part of their investigation of Gilmore. At the hearing, an agent agreed that the video recording showed Gilmore handing a plastic bag (containing suspected methamphetamine) to the confidential informant. It is undisputed that the recording then shows Gilmore taking or holding the $20 bill. It is clear that the confidential informant intended to show that Gilmore was selling methamphetamine to him, and that the statement was offered for the truth of the matter asserted. The confidential informant's movements were thus a statement.

Id. at 539. We granted the State's petition for certiorari.

2. *Analysis.*

(a) *Standard of Review.*

We ordinarily review the trial court's grant of a motion in limine for abuse of discretion. See *State v. Stephens*, 307 Ga. 615, 616 (837 SE2d 830) (2020). And when confronted with a mixed question of law and fact, "we accept the trial court's findings on disputed facts and witness credibility unless they are clearly

6

erroneous, but independently apply the law to the facts." *Jones v. State*, 291 Ga. 35, 37 (727 SE2d 456) (2012); see also *Lilly v. Virginia*, 527 U.S. 116, 136-137 (119 SCt 1887, 144 LE2d 117) (1999) (setting forth a de novo standard of review for "fact-intensive, mixed questions of constitutional law," reasoning that "independent review is necessary to maintain control of, and to clarify, the legal principles governing the factual circumstances necessary to satisfy the protections of the Bill of Rights," but reviewing the trial court's determination of "historical facts" for clear error) (citation and punctuation omitted). As a result, we will review de novo a trial court's ruling on whether the conduct depicted on a video recording constitutes a testimonial statement under the Confrontation Clause. See *Jones*, 291 Ga. at 36-37. See also, e.g., *United States v. Taylor*, 688 Fed. Appx. 638, 640 (11th Cir. 2017) (per curiam) ("We review the district court's ruling on a Confrontation Clause claim *de novo*."). For the reasons explained below, we conclude that the Court of Appeals erred by affirming the trial court's denial of the State's motions to admit the video recording of the controlled buy on

7

Confrontation Clause grounds.

(b) *The CI's Nonverbal Conduct Depicted on the Video Recording Does Not Constitute a Statement.*

In *Crawford*, the United States Supreme Court held that the Sixth Amendment's Confrontation Clause barred the admission of testimonial statements — a form of hearsay, see *Crawford*, 541 U.S. at 53 (noting that "testimonial hearsay" is the "primary object" of the Confrontation Clause) — from a declarant who is unavailable to testify at trial unless the party against whom the statements were offered had a prior opportunity to cross-examine the declarant. See id. at 68.[6]  Thus, for evidence to fall within the ambit of the Confrontation Clause, it must be both a "statement" and "testimonial."  See id.  See also *Stephens*, 307 Ga. at 618.

Under OCGA § 24-8-801 ("Rule 801"), which we may look to in considering whether the Confrontation Clause's restrictions apply to

---

[6] We note that any verbal or nonverbal statements Gilmore — the defendant in a criminal case — made on the video recording would not implicate the Confrontation Clause.  See *Reed v. State*, 307 Ga. 527, 535-536 (837 SE2d 272) (2019) (explaining that, in general, admissions by a defendant are not subject to the Confrontation Clause).

8

evidence, a "statement" is not limited only to "[a]n oral or written assertion[.]" See OCGA § 24-8-801 (a) (1). Indeed, included in the Rule 801 definition of "statement" is the "[n]onverbal conduct of a person, if it is intended by the person as an assertion." OCGA § 24-8-801 (a) (2). See also *United States v. Lamons*, 532 F3d 1251, 1263 (11th Cir. 2008) ("The Federal Rules of Evidence define a 'statement' as an '(1) oral or written assertion or (2) nonverbal conduct of a *person*, if it is intended by the person as an assertion.'") (quoting Fed. R. Evid. 801 (a)) (emphasis in original).[7]

---

[7] OCGA § 24-8-801 (a) (2) is materially identical to its federal counterpart, see Federal Rules of Evidence 801 (a), and in a case where the analysis turned on the interpretation of Georgia's Rule 801 (a) (2), we would be required to look to federal decisions interpreting Federal Rule of Evidence 801 (a). See *Jenkins v. State*, 303 Ga. 314, 317 (812 SE2d 238) (2018). Although not required to do so in this constitutional law case, we nonetheless turn to federal decisions interpreting Rule 801 for guidance.

We note that although the United States Supreme Court has said that "(i)t seems apparent that the Sixth Amendment's Confrontation Clause and the evidentiary hearsay rule stem from the same roots," *Giles v. California*, 554 U.S. 353, 365 (128 SCt 2678, 171 LE2d 488) (2008), that Court has not yet clarified whether the definition of "statement" in Rule 801 captures the universe of statements protected by the original public meaning of the Confrontation Clause. However, courts generally have viewed the definition of "statement" in Rule 801 (a) to be "uncontroversial," even though neither the Georgia Evidence Code nor the Federal Rules of Evidence "formally demarcate the scope of 'statements' for Confrontation Clause purposes." See, e.g., *Lamons*, 532 F3d at 1263; *United States v. Washington*, 498 F3d 225, 230 n.1

We have noted that "the key to the definition of 'statement' is that nothing is an assertion unless intended to be one." *State v. Orr*, 305 Ga. 729, 741 (827 SE2d 892) (2019) (punctuation omitted) (quoting Fed. R. Evid. 801 (a) advisory committee's note on 1972 Proposed Rules). Examples of conduct deemed a nonverbal statement by this Court and the federal Courts of Appeals include "the act of an eyewitness pointing to identify a suspect in a lineup as the perpetrator of a crime," id., and a co-conspirator "pointing out" a drug dealer's house, *United States v. Caro*, 569 F2d 411, 416 n.9 (5th Cir. 1978) (punctuation omitted). See also, e.g., *United States v. Martinez*, 588 F3d 301, 310-311 (6th Cir. 2009) (holding that a doctor's conduct on a video recording, which depicted him

(4th Cir. 2007).

Gilmore acknowledges that Rule 801 "might provide guidance" in defining a "statement" for Confrontation Clause purposes, but contends that "[t]he definition of hearsay under the Confrontation Clause is broader than Rule 801's." In this regard, the sole contention Gilmore advances is that the CI's conduct in this case constituted implied hearsay, which Gilmore contends is not necessarily covered by Rule 801 (a)'s definition of a "statement" but which nonetheless constitutes a testimonial statement. As we explain more below, the CI's conduct in this case was not implied hearsay; accordingly, we need not decide Gilmore's contention about the scope of "statements" for purposes of the Confrontation Clause and assume, without deciding, that Rule 801 (a) (2)'s definition of "statement" applies here.

10

performing a medical procedure, constituted a nonverbal statement about the proper way to perform the procedure); *United States of America, for the Use and Benefit of Carter Equip. Co., Inc. v. H. R. Morgan, Inc.*, 544 F2d 1271, 1273 n.1 (5th Cir. 1977) (holding that a subcontractor's signing of invoices for repair and maintenance "clearly constitute[d] nonverbal conduct intended as an assertion" that he owed debt on the invoices). Cf. *Wiggins v. State*, 295 Ga. 684, 685-686 & n.2 (763 SE2d 484) (2014) (holding that a shooting victim "respond[ing] affirmatively by nodding his head" to a family member's question about whether a particular person shot him was a statement (and thus hearsay) but was admissible as a dying declaration under former OCGA § 24-3-6).

On the other hand, this Court and others have concluded that nonverbal conduct does *not* constitute a statement when it is not intended to be an assertion. See *Orr*, 305 Ga. at 741 (stating that a defendant's failure to call the police after he was allegedly attacked by the victim was not a nonverbal statement). See also, e.g., *United States v. Farrad*, 895 F3d 859, 877 (6th Cir. 2018) (rejecting

11

defendant's argument that photographs of guns — including one featuring a person who looked like the defendant and others showing a close-up of a hand holding a gun — "were all out-of-court 'statements' that [the defendant] illegally possessed a firearm," and concluding that the photographs did not constitute nonverbal statements) (citation and punctuation omitted); *United States v. Kool*, 552 Fed. Appx. 832, 834 (10th Cir. 2014) (holding that a defendant did not intend to make an assertion when he, upon being told that law enforcement officials had an incriminating photograph showing a hand with tattoos on it, moved his hands from the interview table and placed them under his armpits).

Here, Gilmore contends that the CI's nonverbal conduct in the video recording constituted a statement because the CI intended to "prove [that] Gilmore sold drugs." But we are not convinced. Unlike a witness pointing to a specific person in a police lineup (nonverbal conduct intended to assert something along the lines of "that is the person") or a person nodding her head in response to a specific question (nonverbal conduct that is intended to assert "yes"), we

12

cannot say that a person handing money to another person and taking possession of a physical object in return is "intended [to be] an assertion." See Rule 801 (a) (2). We simply cannot conclude on this record — as Gilmore implicitly asks us to — that the CI intended to assert through his conduct something along the lines of "You are a drug dealer" or "We are entering into a sale of illegal drugs" when he handed a $20 bill to Gilmore and received drugs in exchange.[8]

---

[8] We emphasize that we reach this conclusion based on the specific evidence in the record before us in this appeal: a presumptively mute video recording of a transaction. We also note that a foundational assumption in our analysis is that "[l]aw enforcement officers with a drug task force suspected Gilmore of selling drugs" and that agents "sent [the CI] to Gilmore's home to purchase drugs," as opposed to sending the CI to purchase methamphetamine from an unspecified drug dealer that the CI was asked to identify and select. *Gilmore*, 355 Ga. App. at 537. That law enforcement officials specifically targeted Gilmore comports with the State's representation on appeal that "members of the Rome Floyd Metro Task Force . . . met with a confidential informant for the purpose of conducting a controlled methamphetamine purchase *from David Gilmore*." (Emphasis supplied.) We leave for another day the harder question of whether the Confrontation Clause would be implicated if, for example, law enforcement officials had instead instructed a CI to purchase drugs "from his dealer," and then the same video recording of the transaction were made. Compare *United States v. Gomez*, 617 F3d 88, 91-97 (2d Cir. 2010) (holding that an agent's testimony that he told a CI to "call his [drug] supplier," took the CI's phone, and dialed the defendant's number before handing the phone back to the CI was "prejudicial hearsay" because it created the "inescapable" inference that the CI "had told [the agent] that [the

13

Other courts that have evaluated Confrontation Clause claims pertaining to conduct depicted in video recordings or still images taken from them have reached the same conclusion on similar questions. For example, the Eleventh Circuit in *Taylor* evaluated a Confrontation Clause claim pertaining to a muted video recording that showed "from [a] confidential informant's perspective" a CI getting out of a car as part of a controlled drug purchase, walking toward the defendant, and police officers "arriv[ing] on the scene" after an "arrest signal was given." 688 Fed. Appx. at 641-643. It concluded that "the muted video clip did not appear to depict the [CI] or the defendant, the only two individuals involved, making any 'assertions.'" Id. at 642 ("On this record, it is not clear that the footage of the confidential informant even contained testimonial statements for purposes of the Confrontation Clause."). In addition, the Seventh Circuit in *United States v. Wallace*, 753 F3d 671 (7th Cir. 2014), held that a mute video showing a drug dealer handing

defendant] was his supplier," and recognizing that such testimony "directly implicates the Confrontation Clause and [the defendant's] right to confront his accusers in court").

14

cocaine to a CI did not depict a nonverbal statement, while also noting that a law enforcement official "narrated the video at trial," that "his narration was a series of statements," that "he was subject to being cross-examined and was," and that he was "thus . . . 'confronted.'" 753 F3d at 674-675 (explaining that the court could not "fit the videotape to" Federal Rule of Evidence 801 (a)'s definition of a "statement"). See also *United States v. Baker*, No. 3:17-cr-59, 2019 WL 5682952, at *2-*3 (S.D. Oh. Nov. 1, 2019) (finding that video clips from surveillance footage depicting the defendant weighing drugs, providing drugs to customers, displaying a firearm, and interacting with members of the conspiracy contained no testimonial statements and was therefore not barred by the Confrontation Clause and that, for hearsay purposes, the nonverbal conduct depicted on the recording was not a statement). Here, much like in *Taylor*, *Wallace*, and similar cases from across the country, the video recording of the CI's conduct serves as a visual depiction of a transaction, and the conduct the video depicts does not constitute a statement. See, e.g., *Wallace*, 753 F3d at 675; *Taylor*,

688 Fed. Appx. at 642.

Gilmore nonetheless points to *Martinez* to support his contention that the nonverbal conduct depicted on the video recording was, in fact, intended as an assertion (and thus constituted a statement). He places significant analytical weight on "who requested the nonverbal conduct" (i.e., law enforcement officials) and on "the nonverbal conduct's purpose" (i.e., "to accuse someone of committing a crime"). See *Martinez*, 588 F3d at 311 (noting that the doctor "made the video in response to an FBI request" and did so "with the purpose of demonstrating the proper performance" of the medical procedure at issue in that case). In *Martinez*, the Sixth Circuit held that the nonverbal portion of a video recording in which a doctor demonstrated the "proper performance of nerve-block injections" constituted a statement under Federal Rule 801. Id. Extrapolating from the analysis in that case, Gilmore argues for a categorical rule that "[c]onduct intentionally made at law enforcement's request to accuse someone of committing a crime" constitutes a statement, and thus implies that the CI's nonverbal

16

conduct on the video in this case constituted a statement.

But Gilmore's proposed rule misapprehends the Sixth Circuit's analysis in *Martinez.* Although that court noted that the doctor in *Martinez* made a video at the FBI's request, its reference to the doctor's "purpose" in making the video pertained to the doctor's "intent" to demonstrate how to conduct a specific medical procedure — not an intent to "accuse someone of committing a crime," as Gilmore suggests. See id. at 311 ("Here, Dr. Boswell made the video in response to an FBI request, with the purpose of demonstrating the proper performance of nerve-block injections. Accordingly, because of Dr. Boswell's intent, we conclude that his conduct during the course of the video is an assertion of proper medical performance and is, therefore, a statement under Rule 801(a) of the Federal Rules of Evidence."). Put simply, the Sixth Circuit's conclusion that the nonverbal conduct depicted in the video recording was a statement turned on the doctor's intention to *make an assertion* — that is, an intention to demonstrate with his conduct how to perform a particular medical procedure — and not on his cooperation with law

17

enforcement officials, or on a characterization of *why* he agreed to make the video in the first place.[9] *Martinez* is thus distinguishable, and Gilmore's reliance on it is misplaced.[10]

Citing a number of other non-binding cases, Gilmore argues alternatively that even if the CI's conduct did not constitute a statement, it must still be barred by the Confrontation Clause because it was implied hearsay — in other words, it was offered to imply the testimonial assertion that the CI purchased drugs from Gilmore. See, e.g., *Park v. Huff*, 493 F2d 923, 928 (5th Cir. 1974)

---

[9] In this respect, Gilmore conflates the analysis of whether nonverbal conduct constitutes a *statement* with whether a given statement is *testimonial* for purposes of the Confrontation Clause. See *Crawford*, 541 U.S. at 51 (describing the "core class of 'testimonial' statements" as "*ex parte* in-court testimony or its functional equivalent—that is, material . . . that declarants would reasonably expect to be used prosecutorially") (citation and punctuation omitted). In so doing, Gilmore sidesteps the threshold question of whether the conduct was intended to be an assertion (and was thus a statement) in the first place. Contrary to Gilmore's contentions on appeal, the fact that a CI cooperated with law enforcement officials does not by itself convert nonverbal conduct that was not intended to be an assertion into a statement.

[10] Since the Sixth Circuit decided *Martinez*, that same Circuit, a district court in the Circuit, and other federal courts have specifically distinguished it in their Confrontation Clause analyses. See, e.g., *Farrad*, 895 F3d at 877 (photographs of the defendant holding a gun); *Baker*, 2019 WL 5682952 at *2-*3 & n.2 (video clips from surveillance footage of a defendant interacting with members of a conspiracy and weighing drugs).

18

(explaining that "[p]roof of a particular fact . . . which is relevant only as implying a statement or opinion of a third person" is inadmissible implied hearsay) (citation and punctuation omitted); *State v. Davis*, 800 SE2d 138, 146-147 & n.8 (S.C. Ct. App. 2017) (holding that a law enforcement officer's testimony was implied hearsay barred by the Confrontation Clause where the officer testified that a CI went to the defendant's house with government funds, purchased drugs, and returned with methamphetamine, given that the CI was unavailable to testify at trial, the testifying officer had not been present at the buy, and there was no video recording of the buy).

But this argument also fails. As an initial matter, the CI's conduct depicted on the video recording does not imply that the CI somehow made a statement accusing Gilmore of selling methamphetamine or expressing an opinion or belief that he did so. As Gilmore readily admits, the CI engaged in the controlled buy at the direction of law enforcement, who sent him to purchase methamphetamine specifically from Gilmore. We cannot say that

19

the video recording itself implied that the CI made any testimonial statements to law enforcement. Compare *Park*, 493 F2d at 928. Moreover, *Davis* is inapposite because — unlike in that case, where there was no video recording of the controlled buy and the substance of the officer's testimony could only have come from the CI's statements, see *Davis*, 800 SE2d at 146 — the controlled buy at issue here was captured on a video recording, which a law enforcement officer who participated in setting up the buy reviewed and the State can play for the jury (if it is otherwise admissible) at Gilmore's trial. Thus, unlike the officer's testimony in *Davis*, the evidence at issue here — the video recording — does not create an implication that the CI told the officers anything.

We are similarly unpersuaded by *Lowe v. State*, 97 Ga. 792 (25 SE 676) (1896), the one Georgia case Gilmore cites in support of his implied-hearsay argument. See id. at 793-794 (holding that the trial testimony of a rape victim's mother was inadmissible hearsay because the mother testified that the victim had shown her "the clothes she had on at the time" of the rape, where "the mother was

20

not present on that occasion, [and] her only knowledge as to what clothes her daughter wore at the time must have been derived alone from the latter's statements") (punctuation omitted).  Again, unlike the testimony in *Lowe*, the video recording here merely depicts the CI's nonverbal conduct, and that conduct does not imply a hearsay statement.

Because the CI's nonverbal conduct depicted in the video recording did not constitute a statement — even by implication — it could not as a matter of law constitute a testimonial statement barred by the Confrontation Clause.  See *Crawford*, 541 U.S. at 68.  Accordingly, we reverse the decision of the Court of Appeals and remand this case for further proceedings consistent with this opinion.

*Judgment reversed and case remanded.  All the Justices concur.*

Decided August 24, 2021.

Certiorari to the Court of Appeals of Georgia — 355 Ga. App. 536.

*Leigh E. Patterson, District Attorney, Luke A. Martin, Morgan B. Bottger, Assistant District Attorneys*, for appellant.

*Jonathan R. Hamrick, Sean J. Lowe*, for appellee.